**Erica MOSELY, M.D., Appellant**

v.

**Margaret MUNDINE and Abraham Mundine, Appellees.**

**No. 05–07–00213–CV.**

Court of Appeals of Texas, Dallas.

April 4, 2008.

---

On Appeal from the 192nd Judicial District Court, Dallas County, Texas, Trial Court Cause No. 06–09678–K.

Kenneth W. Braxton, Charles G. Bell, for Erica Mosely, M.D.

Douglas Michael Wood, for Margaret & Abraham Mundine.

Before Justices MOSELEY, LANG, and MAZZANT.

## OPINION

Opinion by Justice MOSELEY.

This is an accelerated interlocutory appeal in a medical malpractice suit. Appellant Erica Mosely, M.D. complains the tri-al court erred in denying her motion to dismiss, which was based on her objections to the sufficiency of the expert report filed by the plaintiffs/appellees, Margaret Mundine and her husband, Abraham. The Mundines moved to dismiss the appeal for lack of jurisdiction. We conclude we have jurisdiction. We resolve Dr. Mosely's issue against her and affirm the trial court's order.

## I. BACKGROUND

The Mundines alleged that, on May 1, 2004, Mosely evaluated Margaret in the emergency room of Doctors Hospital of Dallas after a motor vehicle accident. Mosely ordered a chest x-ray, among other evaluations. Mosely reviewed the chest x-ray and interpreted it as normal. A radiologist also reviewed the chest x-ray and noted an abnormality—a one-centimeter-sized nodule on Margaret's upper right lung. Although the emergency department was notified of the abnormality, Margaret was not. She was discharged.

About two years later, on June 5, 2006, Margaret went to Doctors Hospital again, with a different complaint. A chest x-ray at that time "revealed a large cavitary lesion," and a CT chest scan revealed a five to six-centimeter-sized mass on the upper right lung. Subsequent tests showed she had non-small cell carcinoma of the lung. Margaret underwent surgery and intensive chemotherapy.

The Mundines sued Mosely, alleging she was negligent in failing to detect a mass on the 2004 chest x-ray and in failing to notify Margaret that the x-ray was abnormal. The Mundines alleged that, had Margaret's cancer been detected earlier, the lesion could have been removed. As a result of Mosely's negligence, Margaret had undergone a right upper lobectomy, partial lower lobectomy, and aggressive chemotherapy. Her chances of survival were

greatly reduced and her quality of life and daily activities were significantly diminished. They alleged that Abraham suffered loss of companionship and consortium and had been Margaret's primary caretaker because of her illness.[1]

The Mundines attached Steven Thompson, M.D.'s expert report and curriculum vitae to their petition, which was filed September 14, 2006. Mosely objected to Dr. Thompson's report as insufficient under section 74.351(a). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2007). The Mundines filed a response, and Mosely filed a reply to that pleading. On January 17, 2007 (123 days after filing their petition), the Mundines filed Thompson's amended expert report. Mosely filed a motion to dismiss under section 74.351(b), objection to the sufficiency of the expert report, and motion to strike the amended report. The trial court denied these motions. Mosely filed a notice of accelerated appeal pursuant to section 51.014(a)(9) of the civil practice and remedies code. *See id.* § 51.014(a)(9) (Vernon Supp.2007).

## II. MEDICAL LIABILITY EXPERT REPORTS

Within 120 days of filing a lawsuit asserting a health care liability claim, a plaintiff must serve an expert report, with the expert's curriculum vitae ("CV"), to each defendant against whom a liability claim is asserted. TEX. CIV.PRAC. & REM. CODE ANN. § 74.351(a). A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6). *Id.* § 74.351(*l*).

If the plaintiff does not timely serve an expert report, the court must, on the affected defendant's motion, award attorney's fees and costs of court and dismiss the case with prejudice. *Id.* § 74.351(b).

▬ We review the trial court's determination on a motion to dismiss a health care liability claim for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (discussing former article 4590i). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam). We may not substitute our judgment for the trial court's judgment. *Id.* We cannot find the trial court abused its discretion merely because we would have decided the matter differently. *See Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.–Dallas 2007, no pet.). If, however, the trial court clearly failed to analyze and determine the law correctly or applied the law incorrectly to the facts, then it abused its discretion. *See id.* at 445.

## III. JURISDICTION

The Mundines argue this Court lacks jurisdiction because the trial court's order is not an order from which an interlocutory appeal is authorized. They filed a motion to dismiss this appeal arguing the trial judge's ruling is not appealable and we lack jurisdiction over this appeal. We disagree.

We have previously concluded we have jurisdiction under similar facts and circumstances as are presented here. *See id.* at 444 (appellate court has jurisdiction when trial judge's order, in part, denies request

---

1. The Mundines' cause of action for negligence against Doctors Hospital is not before us in this interlocutory appeal.

for dismissal challenging adequacy of expert report under section 74.351(*l*)); *Romero v. Lieberman,* 232 S.W.3d 385, 388 (Tex.App.–Dallas 2007, no pet.), and the cases cited therein. Thus we deny the Mundines' motion to dismiss.

## IV. DENIAL OF MOTION TO DISMISS EXPERT REPORT

In her single issue, Mosely argues the trial court abused its discretion in failing to grant her motion to dismiss because Thompson was not qualified to provide opinions on causation and because Thompson's opinions as to causation in his initial expert report are conclusory and speculative. She also argues the trial court improperly considered the late filing of Thompson's amended expert report.

### A. Expert's Qualifications to Opine on Causation

█ Mosely argues Thompson is not qualified to render opinions under rule of evidence 702 because his expert report and CV list him as an emergency physician and internist, but Margaret's injuries involved the treatment and prognosis for cancer, which is typically provided by an oncologist. Therefore, argues Mosely, the Mundines' report failed to meet the requirements of section 74.351(r)(5).

As pertinent to this appeal, an "expert" means "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence[.]" TEX. CIV.PRAC. & REM.CODE ANN. § 74.351(r)(5)(C). *See id.* § 74.403(a) (addressing qualifications for experts in health care liability claims). To

be so qualified under the Texas Rules of Evidence, an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders v. Heise,* 924 S.W.2d 148, 153 (Tex. 1996) (citing rule of evidence 702).

█ Whether a witness is qualified as an expert is within the trial court's discretion. *See id.* at 151. The party offering the expert's testimony bears the burden of proving the witness is qualified under rule of evidence 702. *Id.* We consider only the expert's report and CV in determining whether the witness is qualified as an expert under section 74.351. *See Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 758 (Tex.App.–Houston [14th Dist.] 2007, no pet.).

Thompson's CV states he is a board certified internist; he has been an "urgent care provider"; and he is currently "Emergency Medicine/Hospitalist, Medical Director" of Vista Hospital of Dallas. For the previous four years, he had been the Director of Emergency Medicine at the Medical Center of Mesquite. In his expert report, Thompson stated that he was familiar with "the same or similar circumstances such as those demonstrated in the instance." He also stated that "[e]mergency [r]oom physicians order and interpret x-rays as part of their routine scope of practice." The conduct causing the Mundines' injuries related to the ability of an emergency room physician to interpret a routine chest x-ray and identify an abnormality, not the diagnosis and treatment for cancer. The record shows the trial court could have concluded the Mundines met their burden to prove Thompson had the knowledge, skill, experience, training, or education regarding that specific emergency room physician's scope of practice. *See Broders,* 924 S.W.2d at 153. *Cf. In re*

*Windisch,* 138 S.W.3d 507, 513–14 (Tex. App.–Amarillo 2004, orig. proceeding) (per curiam) (physician's report and CV showed "familiarity" with "interventional procedure" at issue but not qualification to opine on standard of care). We conclude the trial court did not abuse its discretion in overruling Mosely's objection to Thompson's qualifications as an expert pursuant to section 74.351(r)(5). We reject Mosely's first argument.

## B. Adequacy of Expert's Report as to Causation

██ Next, Mosely argues Thompson's expert report was conclusory as to causation and thus failed to meet the requirements of section 74.351(r)(6).

 An "expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV.PRAC. & REM.CODE ANN. § 74.351(r)(6). Under subsections 74.351(*l*) and (r)(6), the expert report must represent a good-faith effort to provide a fair summary of the expert's opinions. *Am. Transitional Care Ctrs. of Tex., Inc.,* 46 S.W.3d at 878. A report must include the expert's opinion on each of the elements identified in the statute. *Id.* In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Id.* An expert must explain the basis of his or her statements to link those conclusions to the facts. *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999).

The only opinion Mosely challenges on appeal is Thompson's opinion as to causation. *See Bowie Mem'l Hosp.,* 79 S.W.3d at 52 (parties contesting only causal relationship between alleged breach and injury). In his initial expert report, Thompson stated:

> In the case of Mrs. Mundine, Dr. Mosley [sic] failed to identify a 1cm nodule on the chest x-ray during the ER visit in 5/2004. Approximately 21 months later this nodule had developed into a 6 cm mass extending into the lung tissue with undetermined metastasis. Mrs. Mundine has a poor prognosis given the extent of the tumor growth and required lung resection, chemotherapy[,] and radiation. Had this cancer been detected in 2004[,] the likelihood of survival for Mrs. Mundine would have been significantly greater with a much less invasive treatment protocol. Dr. Mosley [sic] breached the standard of care by failing to detect the early stage of the cancer in May 2004.

> \* \* \* \*

> . . . . Dr. Mosely failed to identify the early cancer nodule in Mrs. Mundine in 2004. This failure resulted in delayed diagnosis of lung cancer, required invasive and aggressive treatment and in all medically probability significant reduction in the life expectancy of Mrs. Mundine.

Thompson links Mosely's failure to identify the one centimeter nodule to Margaret's injury from the developed mass and the need for an "invasive and aggressive treat-

ment" and a "significant reduction" in her life expectancy.

Mosely's reliance on *Hardy v. Marsh*, 170 S.W.3d 865, 870 (Tex.App.–Texarkana 2005, no pet.), is misplaced. In *Hardy*, the plaintiff alleged a physician's negligence caused the amputation of his leg. The expert stated the plaintiff should have had a consultation with a vascular surgeon and if he "had had more immediate treatment that salvage of his right leg would have been more probable." *Id.* The *Hardy* court concluded that the expert failed to link the physician's alleged inaction with the plaintiff's injury and failed to "explain the medical basis of his opinion." *Id.* In contrast, here Thompson explained the medical basis of his opinion that Mosely's failure to detect the one centimeter nodule "resulted in delayed diagnosis of lung cancer, required invasive and aggressive treatment and in all medically probability significant reduction in the life expectancy of Mrs. Mundine." We conclude Thompson's opinion as to causation is not mere conjecture and speculation because he supported his statements with facts. *Cf. Wright,* 79 S.W.3d at 53; *Earle,* 998 S.W.2d at 890; *Windsor v. Maxwell,* 121 S.W.3d 42, 49 (Tex.App.–Fort Worth 2003, pet. denied) (merely stating injury followed act not sufficient because statute "requires an explanation linking the basis of the *expert's* conclusions to the facts"). We reject Mosely's argument to the contrary.

The record shows the trial court could have concluded Thompson's expert report established a causal relationship between Mosely's departure from the standard of care and Margaret's injury, thus constituting a good faith effort to provide a fair summary of the expert's opinions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6); *Am. Transitional Care*

*Ctrs. of Tex., Inc.,* 46 S.W.3d at 878–79. Thompson's expert report addresses how Mosely's conduct has been called into question and provides a sufficient basis for the trial judge to conclude the Mundines' claims against her have merit. *See Am. Transitional Care Ctrs. of Tex., Inc.,* 46 S.W.3d at 879. Therefore, we conclude the trial court did not abuse its discretion in denying Mosely's motion to dismiss pursuant to section 74.351(r)(6). We reject Mosely's second argument.

## C. Striking the Amended Report

Mosely also argues the trial court erred in not striking Thompson's amended expert report because it was filed after the 120–day deadline. However, in light of our conclusion that the trial court did not abuse its discretion in concluding that Thompson's initial expert report met the requirements of section 74.351(r)(6), we need not address Mosely's arguments directed to the amended expert report. *See* TEX.R.APP. P. 47.1.

## V. CONCLUSION

We **DENY** the Mundines' motion to dismiss this accelerated interlocutory appeal for lack of jurisdiction.

Because we have rejected Mosely's arguments that the trial court abused its discretion in denying her motion to dismiss and objection to the sufficiency of the Mundines' expert report, we resolve her single issue against her. We affirm the trial court's order.