UHS OF TIMBERLAWN,
INC., Appellant,

v.

S.B., a Minor, by and through her
Next Friend, A.B., Appellee.

No. 05–08–00222–CV.

Court of Appeals of Texas,
Dallas.

Feb. 24, 2009.

Sidney L. Murphy, Steed Flagg, L.L.P., Rockwell, Cathy F. Bailey, Steed Flagg, LLP, Dallas, for Appellant.

Vicki Kathleen McCarthy, Duncanville, Kirk L. Pittard, F. Leighton Durham, Cheyenne J. Robertson, Durham & Pittard, Dallas, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

Appellee S.B., acting through her next friend A.B., sued appellant UHS of Timberlawn, Inc. She alleges that while she was thirteen years old and a patient at Timberlawn's psychiatric treatment facility, she was placed in a ward with male patients, where one of them raped her. She claims her injuries were proximately caused by the negligence of Timberlawn's employees.

Timberlawn asserts, among other things, that the report of S.B.'s expert, Dr. Michael Jay Levine, is deficient because he did not opine as to whether S.B. was in fact raped; neither does the report indicate Levine was qualified to render such an opinion. We affirm the trial court's order denying Timberlawn's motion to dismiss.

## PROCEDURAL BACKGROUND

S.B. filed the curriculum vitae and report of Dr. Levine within 120 days of the filing of the petition. *See* Tex. Civ. P. & Rem. C. § 74.351 (Vernon Supp.2008). Timberlawn successfully disputed the adequacy of that report, and the trial court gave S.B. an additional thirty days to cure any deficiencies in Levine's report. *See* *id.* § 74.351(c). Thereafter, S.B. filed another report and curriculum vitae from Dr. Levine, entitled "Revised Expert Report." Timberlawn also objected to adequacy of this report, and filed a motion to dismiss. However, the trial court denied Timberlawn's motion. Timberlawn appealed. *See* *id.* §§ 51.014(a)(9); 74.351(b); *Lewis v. Funderburk,* 253 S.W.3d 204, 206–08 (Tex. 2008); *Romero v. Lieberman,* 232 S.W.3d 385, 388 (Tex.App.-Dallas 2007, no pet.).

## APPLICABLE LAW

Within 120 days of filing suit, a plaintiff asserting a healthcare liability claim must serve expert reports for each physician or health care provider against whom such a claim is asserted. Tex. Civ. Prac. & Rem. Code § 74.351(a). These reports must identify the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

As pertinent to this appeal, an "expert" means "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(5)(C).

To be so qualified under the Texas Rules of Evidence, an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996) (citing rule of evidence 702). We consider only the expert's report and CV in determining whether the witness is qualified as an expert under section 74.351. *See Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 758 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

Under subsections 74.351(*l*) and (r)(6), the expert report or reports must represent a good-faith effort to provide a fair summary of the expert's opinions. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). The expert-report requirement serves two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the claims have merit. *Id.* at 879. A report does not fulfill these purposes if it fails to address the standard of care, breach of the standard, and causation, or if it only states the expert's conclusions regarding these elements. *Id.* at 879. Although the report need not marshal all of the plaintiff's proof, it must include the expert's opinion on each of the elements identified in the statute. *See id.* at 878. Moreover, the expert's report must explain the basis of his or her statements to link those conclusions to the facts. *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999); *Mosely v. Mundine,* 249 S.W.3d 775, 780 (Tex.App.-Dallas 2008, no pet.).

## STANDARD OF REVIEW

Traditionally we apply an abuse of discretion standard in reviewing the trial court's decision to deny a motion to

dismiss based on failure to file an adequate expert report. *See Walker v. Gutierrez,* 111 S.W.3d 56, 63 (Tex.2003) (discussing predecessor statute to § 74.351(c)).[1] The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam); *Mosely,* 249 S.W.3d at 778. We may not substitute our judgment for the trial court's judgment, or find that the trial court abused its discretion merely because we would have decided the matter differently. *Id.* If, however, the trial court clearly failed to analyze and determine the law correctly or applied the law incorrectly to the facts, then it abused its discretion. *Id.*

## ANALYSIS

On appeal Timberlawn asserts several complaints about the revised expert report.

### A. "New" Report

In its fourth issue Timberlawn argues the revised report contains new opinions with regard to the breach of the standard of care and causation, and thus constitutes a "new report" that: (1) was improperly filed after the time limitations provided by section 74.351; and (2) "exceeds the scope of § 74.351(c)." It argues the statute "does not allow a plaintiff to obtain and serve a new report." As sole support for its argument, Timberlawn cites the court of appeals's opinion in *Danos v. Rittger,* 253 S.W.3d 294 (Tex.App.-Houston [1st Dist.] 2007), *rev'd* 253 S.W.3d 215 (Tex.

2008). As the Texas Supreme Court reversed the court of appeals on that point, we overrule Timberlawn's fourth issue. *See Danos v. Rittger,* 253 S.W.3d 215 (Tex. 2008) (citing *Lewis v. Funderburk,* 253 S.W.3d 204 (Tex.2008)).

### B. Causation-related Complaints

■ In its remaining issues, Timberlawn asserts Levine's revised report and curriculum vitae do not establish he is qualified to render an opinion as to causation, and the revised report is inadequate and conclusory as to that issue. These arguments all flow from Timberlawn's position disputing whether S.B. was, in fact, raped.

Timberlawn contends that, absent a statement in Levine's revised report (presumably based on all reasonable medical probability) that S.B. was in fact raped, Levine's revised report fails to identify the "causal relationship between [Timberlawn's actions] and the injury, harm, or damages claimed." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). Timberlawn argues Levine did not opine, nor did he show he was qualified to opine, as to whether S.B. had been raped. Timberlawn's arguments are best summarized in the conclusion and prayer set forth in its brief:

> [Levine] did not and/or could not express an opinion, based on his education, training or experience, that [S.B.] was sexually assaulted or raped. [S.B.'s] expert did not nor could not articulate facts to support any opinion that [Timberlawn's] alleged breaches in the stan-

---

1. Timberlawn recognizes this; nevertheless, citing discussions (but not rulings) in two court of appeals' opinions, it contends we should apply a de novo standard. Those two opinions are *Kendrick v. Garcia,* 171 S.W.3d 698, 702 (Tex.App.-Eastland 2005, pet. denied), and *Quint v. Alexander,* No. 03–04– 00819–CV, 2005 WL 2805576 (Tex.App.-Austin 2005, pet denied.). However, Timberlawn provides no additional briefing, or any analysis or discussion as to how the two standards might differ in the context of this appeal. Thus we decline Timberlawn's invitation.

dard of care proximately caused [S.B.'s] alleged sexual assault or rape. [S.B.'s] expert has not shown himself to be qualified to render an opinion that [S.B.] was sexually assaulted or raped or that the alleged breaches in the standard of care proximately caused [S.B.'s] sexual assault or rape.[2]

Thus, the premise of Timberlawn's arguments is that unless S.B. can present the report of a qualified expert opining that S.B. was actually raped, her expert report(s) cannot identify the alleged causal relationship between Timberlawn's actions or omissions and S.B.'s alleged injuries, as required by section 74.351(r)(6). We reject this premise.

 In some healthcare liability claims, the "injury, harm, or damages claimed" flow from the existence of a medical condition that itself resulted from the breach of the applicable standard of care. In such cases, identifying the causal relationship between the alleged breach of the standard of care and the resulting harm involves not only an explanation as to how the standard of care was breached, but also how the breach gave rise to the new, deleterious medical condition. Similarly, other healthcare liability claims may allege that a breach of the applicable standard of care exacerbated a pre-existing medical condition, or hindered or prevented the effective treatment of such a condition. Identifying the "breach/injury" causal relationship in these cases may well require an expert to opine as to the existence, extent, and prognosis of the pre-existing medical condition, as well as how the alleged

breach of the standard of care aggravated such a condition, impeded or prohibited its treatment, and otherwise affected the patient's prognosis.

However, S.B.'s claim is different. S.B. alleges that, as a result of Timberlawn's failure to meet the applicable standards of care relevant to its treatment of her, she was raped. Rape is not a medical condition. It is an assault. Moreover, rape may—or may not—be accompanied by medically ascertainable evidence of physical trauma, or even physical evidence that it occurred.

 Medical evidence of an alleged sexual assault is not required even in criminal prosecutions; the rule in Texas is that "penetration may be proven by circumstantial evidence." *See Villalon v. State,* 791 S.W.2d 130, 133 (Tex.Crim.App.1990). Moreover, the testimony of a sexual assault victim alone is sufficient evidence of penetration to support a criminal conviction, even if the victim is a child. *Karnes v. State,* 873 S.W.2d 92, 96 (Tex.App.-Dallas 1994, no pet.) (citing *Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App. [Panel Op.] 1978)).

We decline to hold that in order to identify the causal relationship between Timberlawn's actions and S.B.'s claimed injury, *see* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6), she was required to proffer an expert report opining that she was in fact raped. Thus we reject Timberlawn's arguments that the trial court erred in not dismissing S.B.'s claim because: (1) Le-

---

2. Timberlawn's brief continues:

Accordingly, this case has no merit, and there is no basis to continue to take up the time and resources of the Trial Court, to expend the time, energy, and resources of the litigants, or even to put [S.B.] through what will undoubtedly be a traumatic experience of discovery, deposition, and trial

testimony, reliving her past medical, psychiatric, and educational history, not to mention her 'past history of sexual victimization', and the matters alleged in this lawsuit. This case is the very type of case that Chapter 74 was designed to require the Court to dismiss at an early stage

vine's report did not show him to be qualified to render an opinion on whether S.B. was in fact raped; and (2) because Levine's report did not render an opinion on that issue.

### 1. Levine's Qualifications

The standard of care relevant to S.B.'s claim is the assessment, treatment, and housing of an adolescent mental patient in a mental health facility. Timberlawn does not dispute Levine's qualifications to opine as to that standard or as to the breach of that standard. We agree the record shows the trial court could have concluded S.B. met her burden to show Levine had the knowledge, skill, experience, training, or education necessary to opine whether Timberlawn's conduct breached the applicable standard of care and caused her injury.[3] See Broders, 924 S.W.2d at 153; Mosely, 249 S.W.3d at 779. We conclude the trial court did not abuse its discretion in overruling Timberlawn's objection to Levine's qualifications as an expert pursuant to section 74.351(r)(5). We overrule Timberlawn's issue based on Levine's qualifications.

### 2. Adequacy of Report Regarding Causation

■ An expert report need not marshal the claimant's evidence, but it should explain the basis of the expert's opinions and link his conclusions to the facts. Bowie Mem'l Hosp., 79 S.W.3d at 52. Thus, Levine's report should link Timberlawn's alleged negligence with S.B.'s alleged harm or injuries-her sexual assault by a male patient. See Bowie Mem'l Hosp., 79 S.W.3d at 52; Costello v. Christus 'Santa Rosa Health Care Corp., 141 S.W.3d 245, 249 (Tex.App.-San Antonio 2004, no pet.) ("[C]ausation is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and without which the harm would not have occurred.").

Levine's report states the applicable standard of care required Timberlawn to "provide individualized assessment, and adequate medical treatment in the least restrictive environment and access to advocacy services." Specifically, because S.B. had a history of past sexual victimization and "the risk factors of a co-morbid developmental disability and a psychiatric disorder, the standard of care required Timberlawn to provide[ ] housing where [S.B.] could not be accessed by unsupervised males." The report also states: "If [S.B.] needed to be housed on a unit where males would be located, the standard of care would require Timberlawn to provide a room which could not be accessed by an unsupervised male."

Levine stated Timberlawn breached the standard of care by failing to provide S.B. with individualized assessment, adequate

---

**3.** Levine is a licensed medical doctor and a clinical associate professor at the Department of Psychiatry and Behavioral Sciences at the University of Texas–Houston Medical School. He has worked at hospitals in Texas and other states since completing his residency in 1972 in positions involving child and adolescent neurodevelopmental diagnosis and treatment. He trains and supervises medical students, psychiatry residents, child psychiatry fellows, and psychology interns and externs. Levine's curriculum vitae shows he has extensive training and experience with the assessment, evaluation, and treatment of children and adolescents in a mental health facility or hospital. See Mosely, 249 S.W.3d at 779–80 (emergency room physician qualified to opine about causation regarding emergency room physician's ability to interpret routine chest x-rays and identify abnormality in patient later diagnosed with cancer); Palafox v. Silvey, 247 S.W.3d 310, 316 (Tex.App.-El Paso 2007, no pet.) (physician with training and experience working with elderly patients and knowledge of "swallowing mechanism" qualified to offer opinion on cause of patient's aspiration and death after defendant placed her on non-pureed diet).

medical treatment in the least restrictive environment, and an environment and housing where she would be kept safe. Levine's report states in part that S.B. was actually housed on the male side of the treatment unit. Once housed on the male unit [S.B.] should have been provided a room which could not be accessed by unsupervised male patients. Instead her room was accessed by an unsupervised male, who, she reported, sexually assaulted her. It is my best professional medical opinion from the available reviewed materials that Timberlawn failed to provide individualized assessment, and failed to provide particularly adequate protection from harm such as sexual victimization. Specifically, that Timberlawn breached its duty by housing [S.B.] in such a manner that a male patient was able to obtain access to her for sexual victimization.

According to Levine, if Timberlawn had followed the standard of care, S.B. would have been housed on the girls side of the treatment unit "where she would not have been exposed to harm and/or victimization from male patients." The report also indicates that housing S.B. in a male unit "exposed her to harm which resulted in her self reported rape. Had [S.B.] been housed in a safe and appropriate manner, given her propensity for sexual victimization, she would not have been placed in a male unit."

The report also addresses how the breach of the standard of care caused S.B.'s injury. Specifically, the report states housing S.B.

in the male unit exposed her to harm which resulted in her self reported rape. Had [S.B.] been housed in a safe and appropriate manner, given her propensity for sexual victimization, she would not have been placed in a male unit. By being housed in a male unit it was foreseeable that [S.B.] would be exposed to and was at higher risk for the exact self reported harm which she suffered which was the assault she reported by a 16 year old male patient.[4]

We conclude Levine's report identified the specific conduct of Timberlawn called

---

4. Levine's report also states in part:

Had Timberlawn followed the applicable standard of care discussed above, and not breached the standard of care, as discussed above, [S.B.] would have been properly evaluated, and properly housed on the girls side of the treatment Unit she would have been in the least restrictive environment, where she would not have been exposed to harm and/or victimization from male patients. Had Timberlawn carefully reviewed [S.B.'s] past medical, psychiatric and educational database and made an adequate current evaluation, they would have identified the past history of sexual victimization and the risk factors of a co-morbid developmental disability and psychiatric disorder which made [S.B.] more susceptible to sexual victimization and which required an enhanced specific treatment and protection. . . .

The Sexual Assault reported by [S.B.] resulted in a termination of her stay at Tim-

berlawn, rape crises intervention, fear of pregnancy and due to deterioration of her mental state the eventual re-admittance to another facility. As a direct and proximate cause of the improper housing and security provided, [S.B.] reported a sexual assault which stopped her treatment at Timberlawn and required her to be sent to Parkland Hospital for a rape exam. At the age of 13 she was prescribed and took the morning after pill to prevent a pregnancy. The records show that she developed a fear of getting pregnant or catching a disease. She was unable to complete her therapy program at Timberlawn and went home. She continued to miss school and the home therapist reported that she continued to be upset and had suicidal thoughts. After being at home less than two [w]eeks she was readmitted to another facility, Green Oaks where she had to restart with a new therapy program.

into question by S.B. and provided a sufficient basis for the trial court to conclude the claim has merit. *See Palacios*, 46 S.W.3d at 879. Therefore, the trial court did not abuse its discretion in denying the motion to dismiss. We overrule Timberlawn's issues concerning the adequacy of the expert report.

## CONCLUSION

Having rejected all of Timberlawn's issues, we affirm the trial court's order.