**AFFIRM; and Opinion Filed April 24, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00278-CV

## DAVID D. KIM, M.D, Appellant
V.
## STEVEN HOYT, individually and as next friend of minor children TAYLOR HOYT AND JORDAN HOYT, and as sole administrator of the ESTATE OF KRISTINE HOYT, Appellee

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-01461-C**

### OPINION

Before Justices O'Neill, FitzGerald and Lang-Miers
Opinion by Justice O'Neill

In this interlocutory appeal, appellant David D. Kim, M.D. appeals an order denying his motion to dismiss healthcare liability claims. In two issues, Kim contends the trial court abused its discretion in denying his motion to dismiss because the expert report submitted by appellee Steven Hoyt, individually and as next friend of minor children Taylor and Jordan Hoyt and as sole administrator of the estate of Kristine Hoyt does not meet the requirements of the Medical Liability Act. For the following reasons, we affirm the trial court's judgment.

On March 2, 2009, Dr. Kim performed outpatient laparoscopic surgery on Kristine Hoyt. Kristine was administered intravenous general anesthesia by another physician. During Kim's

procedure, Kristine began "bucking" due to inadequate anesthesia and/or muscle relaxants being administered, causing Kim to sever Kristine's abdominal aorta. Complications followed Kim's efforts to repair the aorta, and tragically Kristine died in the operating room. Immediately following Kristine's death, Kim informed Hoyt that that he had nicked the femoral artery with the trocar. He stated that ordinarily such nicks are repairable, but he had been unable to repair it because of the jagged nature of the puncture. Kim notified Hoyt he had a right to request an autopsy, but stated an autopsy was unnecessary because Kim knew the cause of death. Likewise, Kim informed Hoyt he did not think it was necessary to request the Medical Examiner's Office to investigate the death. Hoyt nevertheless requested an autopsy to determine the cause of Kristine's death.

Two days following the surgery, Kim redictated his operative report, claiming he could not find the original dictation. Hoyt claims the redictation of the allegedly lost report was false and was not consistent with what Kim verbally told him following Kristine's death. Hoyt also alleged that Kim then somehow arranged for Dr. Juan Luis Zamora, a private forensic pathologist, to perform the autopsy. Hoyt alleges that Zamora falsified the autopsy results, concluding the cause of death was the result of a preexisting condition. Hoyt asserted Kim knew or should have known that Zamora falsified the autopsy.

Hoyt sued several defendants alleging claims surrounding Kristine's death and subsequent cover-up regarding the cause of death. With respect to Kim, Hoyt did not allege any acts of negligence that caused Kristine's death, but complained only of his participation in the cover-up. He alleged claims against Kim for fraudulent nondisclosure, common-law fraud, intentional infliction of emotional distress, and conspiracy to commit fraud. Although Hoyt alleged his claims against Kim were not health care liability claims, he nevertheless served Kim

with a report from Dr. Marc Cooperman. Kim responded Hoyt's claims were health care liability claims and objected to the report, asserting it failed to show Cooperman's qualifications to render his opinions and was conclusory as to how the alleged deviations from the standard of care caused the alleged injuries. Before the trial court determined the adequacy of the original report, the parties reached an agreement that Hoyt would be given thirty days to file an amended report.

Hoyt served Kim with Cooperman's revised report. Kim again objected to the report, asserting it failed to establish Cooperman's qualifications and was conclusory as to causation. The trial court disagreed, concluded the report was adequate, and denied Kim's motion to dismiss.

In this appeal, Kim asserts the trial court erred in denying his motion to dismiss. In oral argument, Hoyt conceded his claims were health care liability claims subject to the Act's requirements. Therefore, the sole issue presented is whether the trial court abused its discretion in concluding Cooperman's amended report was sufficient to meet the requirements of the Act.

We review a trial court's decision with respect to expert reports and the qualifications of experts for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001); *Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 569 (Tex. App.—Dallas 2007, pet. denied). When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. *Rosa*, 240 S.W.3d at 569. However, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

A trial court must dismiss a cause if it determines that the report does not represent a good faith effort to comply with the Act's requirements. *See* TEX. CIV. PRAC. & REM. CODE

3

ANN. § 74.351(l) (West 2011); *Palacios,* 46 S.W.3d at 878; *Simonson v. Keppard*, 225 S.W.3d 868, 871 (Tex. App.—Dallas 2007, no pet.). The Act requires the expert to provide a "fair summary" of his or her opinions regarding the applicable standards of care, the manner in which the care rendered failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011).

We determine good faith effort in light of the two purposes the report is meant to serve: (1) to inform the defendant of the specific conduct the claimant is questioning, and (2) to provide a basis for the trial judge to conclude the claims have merit. *Palacios*, 46 S.W.3d at 879. To constitute an objective good faith effort, the report does not need to contain all of the plaintiff's proof. *Fagadau v. Wenkstern*, 311 S.W.3d 132, 138 (Tex. App.—Dallas 2010, no pet.). Nor does it have to meet the same requirements as evidence submitted in a trial or summary judgment proceeding. *Id.* But it must do more than merely state the expert's conclusions about the standard of care, breach, and causation. *Id.* The expert must explain the basis of his statements and link his conclusions to the facts. *Id.*

Here, Hoyt's claims against Kim concern his misconduct and participation in a cover-up intended to cause Hoyt and his family to believe that Kristine's death was caused by a pre-existing condition rather than the negligence of her healthcare providers. Cooperman opined that Kim breached the standard of care when he re-dictated his operative report after the surgery in an attempt to avoid responsibility for a fatal technical error, and created an operative report that inaccurately documented his operative findings. In particular, Cooperman explained Kim's report stated Kristine's aorta was "tortious," even though subsequent autopsy findings showed the aorta was normal. Cooperman also stated that Kim's operative report repeatedly referred to

4

the aortic injury as a "rupture," but Cooperman stated the "stellate injury" seen upon opening Kristin's abdomen is what would be expected from a trocar injury. According to Cooperman, no reasonable surgeon could have concluded there was any possible cause for Kristine's fatal aortic injury other than trocar injury.

Cooperman concluded the standard of care requires accurate documentation of operative findings and Kim's report fell below the standard of care. Cooperman further stated that he spoke to Hoyt who told him the conflicting re-dictated report caused him to feel deceived, confused, anxious, and nervous. He opined such reactions were reasonable, if not to be expected from Kim's conduct. Cooperman further opined that Kim's breach of the standard of care, including presenting misleading causes of Kristine's death, proximately caused "additional emotional distress and mental anguish" to Hoyt and his family.

In this appeal, Kim asserts the trial court abused its discretion in denying his motion to dismiss because (1) Cooperman's expert report did not demonstrate his qualifications to opine as to the cause of Hoyt's mental and emotional injuries, and (2) even if Cooperman were qualified, his opinion is conclusory. Before we can determine whether Cooperman's report was sufficient, we must first determine the causal relationship the report was required to establish. Kim asserts Hoyt was required to present an expert report showing a causal relationship between the alleged fraudulent and fabricated misrepresentations and the mental anguish damages sought. Kim further asserts that only a physician qualified in "evaluating and/or treating mental and emotional injuries" can testify to the cause of such injuries. We disagree.

A traditional healthcare liability claim generally relies upon a physical injury or medical condition. In such cases, the necessary causal relationship the report must show is usually clear, and often complex. However, the Act does not itself limit itself to a showing of physical or

medical injury.  Rather, the Act requires the expert to provide a "fair summary" of the causal relationship between the defendant's failure to meet the applicable standard of care and the injury, harm, *or* damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011).  This is consistent with the overall legislative intent to include claims involving nonmedical injuries within the purview of the Act.  *Cf. Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (in determining whether a claim is a healthcare liability claim, we focus on the duties allegedly breached rather than the type of injuries suffered).

In cases involving healthcare liability claims involving nonmedical injuries, the causal relationship the plaintiff must show may not always be so clear.  For example, in *UHS of Timberlawn, Inc. v. S.B. ex rel. A.B.,* the plaintiff sued a psychiatric treatment facility for damages she sustained when she was raped by a fellow patient.  *See UHS of Timberlawn, Inc. v. ex rel. A.B.*, 281 S.W.3d 207, 209 (Tex. App.—Dallas 2009, pet. denied).  The defendant alleged the plaintiff was required to provide an expert report showing the plaintiff was actually raped to meet the causation requirement.  We disagreed.  We explained that "in some healthcare liability claims, the "injury, harm, or damages claimed" flow from the existence of a medical condition that itself resulted from the breach of the applicable standard of care."  *Id.*  In such cases, identifying the causal relationship between the alleged breach and resulting harm requires an explanation as to how the breach of the standard of care gave rise to the new deleterious medical condition.  *Id.*  However, we concluded the plaintiff in that case was not required to submit an expert report that she was raped.  We explained that the plaintiff's report was not required to establish the rape because (1) she was not complaining her injury gave rise to a medical injury or condition, (2) no expert testimony would be required to prove a rape occurred, and (3) no medical evidence might be available to support her claim.  *See id.* at 212-13.  We concluded the

plaintiff's expert report was sufficient in that it linked the breaches of the standard of care, the defendant's housing the female plaintiff in a male unit, to the harm she suffered, her self-reported rape. *Id.* at 214.

Here, Hoyt's claims arise out of Kim preparing an allegedly fraudulent report to conceal the true cause of Kristine's death. Hoyt alleged a claim for, among other things, intentional infliction of emotional distress. According to Kim, Cooperman had to demonstrate he was an expert in "evaluating and/or treating mental and emotional injuries" to opine as to the cause of any additional emotional distress or mental anguish Hoyt suffered because of the report.

Initially, we note that Cooperman's report is not required to prove compensable damages. Rather, the report was required to show a causal nexus between the complained-of conduct and the injury, harm, or damages *claimed.* Furthermore, a plaintiff has never been required to prove a medical condition to support a claim for intentional infliction of emotional distress or mental anguish damages. And no expert testimony is required to support such a claim. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995). Kim claims it is not relevant whether Hoyt will be required to present expert testimony at trial in determining whether an expert report is required. We agree. However, the issue here is not whether Hoyt had to present an expert report, but what that report was required to show. Because Hoyt will not be required to prove a medical injury capable of diagnosis or treatment, Hoyt's expert report did not have to be qualified in diagnosing or treating such injuries. We now turn to whether the report satisfied the requisites of the Act.

Here, Hoyt complains he suffered mental anguish and emotional distress when he was deceived by Kim regarding the cause of his wife's death. In his report, Cooperman, a board certified general surgeon, opined that the standard of care required accurate documentation of

operative findings, that Kim did not accurately document his findings, and that his report thus presented a misleading cause of Kristine's death. Cooperman stated that, based upon his years of experience in general surgery and administration, no reasonable surgeon could have concluded there was any possible cause for Kristine's fatal injury other than a trocar injury when she suddenly bucked during surgery. Cooperman opined that in an attempt to avoid the responsibility for a fatal intraoperative technical error, Kim described the aorta as "tortuous" and the injury as a "rupture." Cooperman however stated that the injury that would have been viewed upon opening Kristine was consistent with the stellate injury. He also stated that Kristine's second autopsy showed her aorta to be normal, other than the traumatic injury. Cooperman opined that Kim's breaches of the standard of care, which included presenting misleading causes of Kristine's death in his redictated-operative report, proximately caused additional emotional distress and mental anguish to Hoyt. Cooperman thus outlined how Kim breached the standard of care in reporting his operative findings and explained how Kim's breach caused the report to present a misleading cause of Kristine's death.

Cooperman further stated he spoke to Hoyt, who reported to him that the conflicting re-dictated report caused Hoyt and his family, in additional to the grief over the loss of Kristine, to feel deceived, confused, anxious, nervous and uncertain at a time they were particularly vulnerable. Cooperman stated that based upon his experience, these reactions were reasonable as a result of Kim's conduct. Cooperman stated he was qualified to provide his opinion based on his "experience and relationships with patients' families in a surgical context" and his "experience as a practicing general surgeon, and also in an academic and administrative capacity."

8

After reviewing Cooperman's report, we first conclude that the trial court did not abuse its discretion in concluding Cooperman was qualified to render an opinion showing the causal relationship between the breach of the standard of care and the harm alleged. Whether a witness is qualified as an expert is within the trial court's discretion. *Mosely v. Mundine*, 249 S.W.3d 775, 779 (Tex. App.—Dallas 2008, no pet.). The party offering the expert's report bears the burden of proving the witness is qualified under rule of evidence 702. *Id.* A physician is qualified if he has "knowledge, skill, experience, training, or education" to testify about the particular causation opinion at issue. *Thomas v. Alford*, 230 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Although not every licensed doctor is qualified to testify on every medical question, we must be careful not to draw expert qualifications too narrowly. *Adeyemi v. Guerrero*, 329 S.W.3d 241, 247 (Tex. App.—Dallas 2010, no pet.).

Here, Cooperman was a practicing surgeon. As such, he had experience with patients' families in the surgical context. Cooperman was clearly qualified to show how Kim's breaches of the standard of care resulted in a misleading report concerning the cause of death. We also conclude he was qualified to opine that creating such a false report after a surgical fatality was the cause of the emotional distress alleged.

Kim next asserts Cooperman's report was conclusory as to causation. An expert report need not marshal the claimant's evidence, but should explain the basis for its conclusions and link the conclusions to the facts of the case. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Bakhtari v. Estate of Dumas,* 317 S.W.3d 486, 496 (Tex. App.—Dallas 2010, no pet.). A report's adequacy does not depend on whether an expert uses any particular "magic words." *See Benish v. Grottie*, 281 S.W.3d 184, 200 (Tex. App.—Fort Worth 2009, pet.

denied).  We determine whether Cooperman's causation opinion is sufficient by considering it in the context of his entire report.  *Bakhtari*, 317 S.W.3d at 496.

Here Cooperman's report clearly provided a causal nexus between the breach (inaccurately documenting his operative findings) and the resulting report that presented a misleading cause of death.  The report further stated the misleading report caused Hoyt to suffer additional mental anguish and emotional distress.  Cooperman based this opinion on Hoyt's statements to him that the conflicting re-dictated operative report caused him to feel deceived, confused, anxious, nervous, and uncertain.  We conclude Cooperman's report was sufficient to explain the basis for his opinion and was therefore not conclusory.  Consequently, the trial court did not abuse its discretion in denying Kim's motion to dismiss.  *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632-33 (Tex. 2013) (an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements).

We affirm the trial court's judgment.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE


120278F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID D. KIM, M.D., Appellant

No. 05-12-00278-CV      V.

STEVEN HOYT, individually and as next friend of minor children TAYLOR HOYT AND JORDAN HOYT, and as sole administrator of the ESTATE OF KRISTINE HOYT, Appellee

On Appeal from the County Court at Law No. 3, Dallas County, Texas
Trial Court Cause No. CC-11-01461-C.
Opinion delivered by Justice O'Neill.
Justices FitzGerald and Lang-Miers participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellee Steven Hoyt, individually and as next friend of minor children Taylor Hoyt and Jordan Hoyt, and a sole administrator of the estate of Kristine Hoyt, appellee, recover his costs of this appeal from appellant David D. Kim, M.D.

Judgment entered this 24th day of April, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE