

# NUMBER 13-18-00093-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARY McCOY,                                                                  Appellant,

v.

VILMA SANDOVAL,                                                              Appellee.

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Benavides

This is an interlocutory appeal of the trial court's order denying appellant[1] Mary McCoy's motion to dismiss the health care liability claims of appellee Vilma Sandoval. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(9); 74.351(a), (b). By two issues, McCoy argues that (1) Sandoval's amended expert report fails to explain the purported

---

[1]  McCoy is a nurse practitioner at the clinic.

breach of the standard of care and (2) the amended report does not show how the expert was qualified.  We affirm.

## I.  BACKGROUND

This case is before the Court for a second time.  Previously, in *McCoy v. Sandoval*, No. 13-16-00520-CV, 2017 WL 2570822 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.), McCoy appealed the trial court's denial of her objections and motion to dismiss the same expert report.  This Court reversed and remanded back to the trial court to allow Sandoval a chance to cure deficiencies within the expert report.  *See id.* at *7.  The facts as we previously laid out have not changed.  *See id.* at *1.

Since this Court remanded the case back, Sandoval amended her expert report written by Federico Roman Ng, M.D. and served it on McCoy on May 1, 2017.  McCoy again objected to the amended report and moved to dismiss Sandoval's claims.  Sandoval filed a response to McCoy's objections and motion to dismiss.  McCoy filed a subsequent reply on October 3, 2017.  The trial court held a hearing on October 4, 2017 and overruled McCoy's objections and denied her motion to dismiss on February 5, 2018.  The appeal followed.

## II.  EXPERT REPORT

### A.    Standard of Review and Applicable Law

The standards governing the contents of expert reports required by chapter 74 are well established.  *Hebert v. Hopkins*, 395 S.W.3d 884, 889 (Tex. App.—Austin 2013, no pet.).  Chapter 74 defines an "expert report" as a

> fair summary of the expert's opinion as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the

2

physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

A trial court's ruling on the sufficiency of an expert's report is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). Under this review, we defer to the trial court's factual determinations if they are supported by the evidence but review its legal determinations *de novo*. *Id.* A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.* However, in exercising its discretion, it is incumbent upon the trial court to review the reports, sort out their content, resolve any inconsistencies, and decide whether the reports demonstrate a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report . . . .").

To constitute a "good faith effort," as the Texas Supreme Court has explained, the report must include the expert's opinion on "each of the three main elements: standard of care, breach, and causation," and must provide enough information to fulfill two purposes with respect to each element: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit. *See Jelinek v. Casas*, 328 S.W.3d 526, 538–40 & n.9 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d

3

873, 878–79 (Tex. 2001). A plaintiff does not need to present all of her proof or expert testimony in a form that would be admissible at trial, but is required to have the expert "explain the basis for his statements to link his conclusions to the facts" and not merely state conclusions. *Jelinek*, 328 S.W.3d at 539–40. The supreme court held that "'[a] report that merely states the expert's conclusions about the standard of care, breach, and causation' does not fulfill the two purposes of a good-faith effort." *Id.* at 539 (quoting *Palacios*, 46 S.W.3d at 879).

## B.      Causation

By her first issue, McCoy argues that Dr. Ng's amended report "fails to explain how McCoy's purported breach of an unidentified standard of care caused Sandoval's injuries." Dr. Ng's amended report contained the following describing the standard of care breach:

> McCoy's breach of the standard of care actually and proximately caused [Sandoval's] post-traumatic stress disorder, depression, anxiety and insomnia. During my interview with [Sandoval], she explained to me in detail how [McCoy] exclaimed in a harsh and insensitive manner that [Sandoval] "had gonorrhea." I know from my treatment of patients with embarrassing venereal diseases that this type of information must be conveyed delicately in order to limit anxiety, depression and emotional trauma to the patient. [Sandoval] reported experiencing precisely the type of stigma, embarrassment, stress, depression and anxiety that I have observed in other patients suffering from venereal disease. [Sandoval] also reported that she had not experienced elevated stress, anxiety, depression and insomnia prior to her encounter with [McCoy] at the Cash Medical Clinic. Therefore, based on my treatment of numerous patients with venereal disease over several years, knowledge of the indelicate conveyance of sensitive information by [McCoy], the report of stress, anxiety, depression and insomnia in the wake of [Sandoval's] encounter with [McCoy], coupled with the absence of any alternative cause for [Sandoval's] symptoms, I can state with a high degree of confidence that [Sandoval]'s stigma, embarrassment, stress, depression, anxiety and insomnia were the direct and proximate result of the actions of [McCoy] as

4

depicted in this report and more thoroughly in [Sandoval]'s Original Petition.

. . . .

The evidence as written in the Petition does not quite give the true flavor of the stress and anxiety caused by [Sandoval's] encounter. The true effect of the performance by the Cash Medical Clinic is best understood in discussion with [Sandoval] as she recounts her experience. [Sandoval] presented to The Cash Medical Clinic for care in pain and humility. She was treated in a manner that did not meet the standard of care as mandated by Texas State Law and as a result suffered severe embarrassment, anxiety, and anger. Not only did the effects of [sic] interfere with her life but the actions of [McCoy] caused the break-up of her relationship that to date has not been reconciled. During my visit with [Sandoval] she was found to have signs and symptoms consistent with post-traumatic stress disorder, depression, anxiety and insomnia. These symptoms were not present prior to her encounters at Cash Medical Clinic and were of such severity [Sandoval] was prescribed medications to treat these conditions.

As to causation, an "expert must explain, based on facts set out in the report, how and why" a health care provider's breach proximately caused the injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). However, in cases involving healthcare liability claims with nonmedical injuries, the causal relationship the plaintiff must show may not always be so clear. *Kim v. Hoyt*, 399 S.W.3d 714, 718 (Tex. App.—Dallas 2013, pet. denied). An expert report in those types of claims is "required to show a causal nexus between the complained-of conduct and the injury, harm, or damages *claimed*. *Id*. at 719 (emphasis in original). Here, Dr. Ng's report provided the causal nexus between the breach (McCoy's manner of stating to Sandoval of a possible venereal disease) to the injury (Sandoval's severe mental distress). We conclude Dr. Ng's report was sufficient to explain the basis for his opinion and therefore, not conclusory. *See id*. at 721; *see also McCoy*, 2017 WL 2570822 at *4. We overrule McCoy's first issue.

5

**C.     Qualifications**

By her second issue, McCoy alleges that Dr. Ng's report "offers conclusory statements regarding his qualifications to address standard of care and causation."  An expert must satisfy § 74.402 to be qualified to provide opinion testimony regarding whether a health care provider departed from the accepted standard of care.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B).  Section 74.402 lists three specific qualifications an expert witness must possess to provide opinion testimony on how a health care provider departed from accepted standards of health care.   The expert must:

> 1.     [be] practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> 2.     [have] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> 3.     [be] qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b).   In determining whether a witness is qualified on the basis of training or experience, § 74.402 also requires the court to consider whether the witness:

> 1.     is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and
>
> 2.     is actively practicing health care in rendering health care services relevant to the claim.

*Id.* § 74.402(c).   A plaintiff offering expert medical testimony must establish that the report's author has expertise regarding "the specific issue before the court which would

6

qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924

S.W.2d 148, 153 (Tex. 1996).

In the report, Dr. Ng writes:

My name is Federico Ng and I am a doctor of Internal Medicine and Pediatrics in San Antonio, Texas. I have been in practice for over 18 years in San Antonio not including medical school clerkships and residency in Dallas and Houston, Texas. As such I am familiar with the laws and standards that govern the practice of medicine. Moreover, I am familiar with the standard of care applicable to a Texas nurse practitioner consulting with and/or treating a patient for a urinary tract infection and/or venereal disease. I am also familiar with the standard of care that applies to a Texas nurse practitioner treating a patient who presents with multiple symptoms including painful urination and diagnosing venereal disease. The standard of care set forth in the privacy rules and other standards cited below apply uniformly and equally to physicians and nurse practitioners.

. . . .

I have specialized knowledge, skill, experience[,] training and/or education advising and counseling patients about various diagnoses, including sensitive subjects such as venereal disease. I have counseled and treated patients who have dealt with the physical symptoms and emotional trauma, stigma and embarrassment that occurs in the wake of diagnosis of venereal diseases, such as herpes, gonorrhea and chlamydia. I have diagnosed patients with venereal disease on multiple occasions and understand from this experience that the indelicate conveyance of such information may cause emotional distress. It has been my experience that insensitivity and brashness in conveying this type of diagnosis tends to compound the stigma and embarrassment felt by a patient who has contracted a venereal disease, often through no fault of their own.

Previously, we had found *Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex.

App.—Dallas 2007, no pet.), to be on point. In *Simonson*, the Fifth Court of Appeals

concluded that an expert report was inadequate because the expert doctor did not state

that he had any familiarity with the standard of care for a nurse practitioner. *Id.* In this

report, Dr. Ng has amended his report to now state that he is familiar with the standard of

7

care applicable to nurse practitioners who treat and diagnose a patient presenting with multiple symptoms, including painful urination and venereal diseases. Additionally, Dr. Ng also elaborates that he has "specialized knowledge, skill, experience[,] training and/or education advising and counseling patients about various diagnoses." He also states that he has "counseled and treated patients" that have dealt with the symptoms and stigma that "occurs in the wake of diagnosis of venereal diseases" and understands the manner in which these diagnoses must be handled. *See McCoy*, 2017 WL 2570822 at *5–6. These qualifications now fit within the definition of § 74.402(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b). The trial court did not abuse its discretion by denying McCoy's objections to Dr. Ng's qualifications in his amended report. McCoy's second issue is overruled.

## III. CONCLUSION

We affirm the rulings of the trial court.


GINA M. BENAVIDES,
Justice


Delivered and filed the
30th day of January, 2020.

8