Marc BOWEN, Appellant,

v.

MISSOURI DEPARTMENT OF CON-
SERVATION and Jerry Conley, Di-
rector of the Missouri Department of
Conservation, Respondent.

No. WD 58711.

Missouri Court of Appeals,
Western District.

March 6, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2001.

Application for Transfer Denied
June 26, 2001.

Kent Lynn Brown, Jefferson City, for appellant.

Jane Ann Smith, James Norton Foster, Jr., St. Louis, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge SMART, and Judge HOWARD.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Marc J. Bowen sought judicial review of a decision by the Missouri Department of Conservation (MDOC) which affirmed his dismissal from employment with that department. The Circuit Court of Cole County, Missouri, the Honorable Byron L. Kinder presiding, affirmed MDOC's decision, and Mr. Bowen appeals. He argues that MDOC erred in terminating his employment because Section 36.390 RSMo Supp.1996 and the MDOC termination procedure adopted in compliance therewith required that his termination be found to be "for the good of the service," which he says is equivalent to a requirement that he be fired only "for cause," and that the evidence was insufficient to demonstrate that his termination was "for cause." MDOC argues to the contrary that Mr. Bowen remained an employee-at-will, subject to termination at any time and for any reason, despite the language in Section 36.390 allowing appeal of his dismissal on the ground that his dismissal was "not for the good of the service." MDOC thus contends that because it allowed Mr. Bowen to appeal his dismissal, he was afforded all of the procedural due process to which he was entitled, and the fact that he was terminated without a finding of cause or that it was "for the good of the service" did not run afoul of his employment rights.

We disagree with Mr. Bowen's contention that Section 36.390's provision allowing appeal of a non-merit employee's dismissal on the ground that it is "not for the good of the service" elevates his status to that of an employee who can only be fired "for cause." We also reject MDOC's contention that once it gives its employees the appeal accorded by Section 36.390(5), it can then fire them for any reason not disallowed by public policy, as to so hold would render meaningless Section 36.390(5)'s provision that a ground for appeal is that the termination was "not for the good of the service ." On appeal, MDOC was required to determine whether his firing was "not for the good of the service." Because MDOC failed to do so, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Marc J. Bowen was terminated from his job as a conservation agent by the Missouri Department of Conservation on August 28, 1997. Mr. Bowen was a fourteen-year veteran of the Missouri Department of Conservation (MDOC). As a conservation agent, his responsibilities included upholding the wildlife code and the criminal laws of the State of Missouri within his assigned territory, Jackson County.

In October 1988, Mr. Bowen moved his family into a home located in a wildlife area of Jackson County known as the Jim

D. Bridger area. He did so at the behest of the Missouri Department of Conservation, which wanted him to maintain the home and the nearby Raptor Rehabilitation Program. The Department felt that Mr. Bowen's presence provided an extra amount of security to both the 360 acres of the Bridger conservation area and the adjoining 10,000 acres of Jackson County parks. In exchange for his maintenance of the home and the Raptor program, Mr. Bowen was allowed to live in the Bridger residence rent-free.

Upon taking possession of the Bridger residence from the Jackson County Park District in October 1988, Mr. Bowen discovered that it was in an advanced state of disrepair. Apparently, the prior resident of the home, who lived there from 1981 to 1988, had neglected to make any improvements to the home. Several windows were broken out, portions of the wood siding were missing, and the siding had not been painted to protect it from the elements in quite some time. The interior of the home was also neglected, with signs of animal damage to the woodwork throughout. Additionally, throughout the home, the carpeting reeked of dog feces and urine. There was also a water line leak that had caused a basement wall to start bowing.

By December 1991, Mr. Bowen had put a substantial amount of his own money into improving the residence. To weatherproof the home, Mr. Bowen re-shingled the roof, replaced the broken windows, and installed vinyl siding around the exterior of the home. He also restored and refinished the splintered woodwork, cabinetry, and fireplace mantle inside the home. He replaced the carpet throughout the residence. Finally, he replaced all the locks, and outfitted the garage with a new steel garage door and electric door opener. The cost of the improvements, paid for by Mr. Bowen personally, was between $6,500.00 and $7,000.00. Mr. Bowen provided the MDOC with a list of all expenditures he incurred in improving the home. He did not seek reimbursement.

In July 1994, management of the Jim Bridger area including the Bridger residence reverted to the Wildlife Division of the MDOC due to the expiration of the management agreement between the MDOC and the Jackson County Park District. Shortly thereafter, in November 1994, the Wildlife Division informed Mr. Bowen that it had determined that the structures in the Jim Bridger area were "nonessential" to the management of the area, that it planned to destroy the residence, and that Mr. Bowen would need to make arrangements to move from the home.

Mr. Bowen then asked Mr. Ron Glover, Protection Division Chief for the Missouri Department of Conservation, to intervene on his behalf, and provided Mr. Glover with the list of expenditures he had incurred in making improvements on the home. Mr. Glover brought Mr. Bowen's concerns to the attention of Mr. Ollie Torgerson, the Wildlife Division Chief. Mr. Glover indicated that he was aware of the Department's need to destroy the residence, but asked Mr. Torgerson to give Mr. Bowen two years to "make other living arrangements and to salvage portions of the improvements [he made] to the house." Mr. Bowen was ultimately granted a two-year extension on his lease, until February 28, 1997.

At the culmination of his two-year lease, Mr. Bowen sought and was granted an extension of the lease until June 30, 1997, so that his children could finish out the school year. The Department again gave Mr. Bowen notice of its intention to destroy the residence, as it was deemed "non-essential" to the management of the property. At the end of this lease period,

Mr. Bowen obtained a final lease extension to July 31, 1997. During this period, Mr. Bowen observed the Department demolishing an outbuilding and silo on the property. The Department made no efforts to salvage materials from these structures prior to demolishing them.

By late June 1997, Mr. Bowen had moved most of his belongings from the Bridger residence. During this same period, he began to remove or "strip" the house of many of the items which he had installed in it. He returned a gate to the Jackson County Parks Department that belonged to the Department. Due to a busy summer and his own health problems, however, Mr. Bowen left behind many items he would have liked to have salvaged when he moved out at the end of July 1997.

Concurrent with Mr. Bowen's departure from the Bridger residence, the MDOC began to implement several leadership changes among its ranks. Mr. Bowen's friend and co-worker, Mr. Kenneth Barncord, was appointed the regional supervisor for the Protection Division, and thereby became Mr. Bowen's supervisor. Mr. Dennis Myers became a district regional supervisor for the MDOC at approximately the same time, and so was also Mr. Bowen's supervisor. Mr. Allen Breshears became another supervisor of Mr. Bowen when he was promoted to Protection Division Chief for the MDOC in July 1997.

On August 12, 1997, Regional Supervisor Barncord was informed at a meeting of Department personnel that the Jim Bridger home had several items missing from it. In response to this information, Mr. Barncord, Protection Unit Chief Allen Breshears, District Supervisor Dennis Myers, and two other employees went to the Bridger residence. Upon their arrival, they discovered that all the kitchen cabinets were removed, and that a vanity, sink,

medicine chest, and bathroom stool, as well as some of the ceiling trim, switch plates, light fixtures, and the mantle were missing from a bathroom. Mr. Bowen met with Mr. Barncord, Mr. Breshears, and Mr. Myers to discuss the condition of the home. At that meeting, Mr. Bowen was ordered to provide a written statement detailing what items he had removed from the home and his justification for doing so. During this meeting, Mr. Bowen indicated to his superiors that it was his understanding, based on his dealings with Mr. Glover, that he had permission to salvage what he put into the home. In response, Mr. Breshears asked Mr. Bowen whether the mantel and cabinets belonged to him. Mr. Bowen answered no. When asked why, then, had he removed these items from the home, Mr. Bowen indicated that he felt justified in removing the items. At that time, Mr. Breshears and Mr. Myers both indicated to Mr. Bowen that there was a "right way and a wrong way of doing things." Mr. Bowen admitted that he may have exercised "poor judgment" in salvaging the mantel and cabinets.

The next day, Mr. Bowen provided Mr. Barncord with a written statement explaining his conduct in removing items from the Bridger residence. In this statement, Mr. Bowen listed the items he removed which belonged to him, and the items belonging to him that were left for the Department to salvage due to his lack of time and inability stemming from his illness. He also listed the cabinetry and mantle as property that he took that belonged to the MDOC. Additionally, the statement indicated an awareness on Mr. Bowen's part that the Department may have been interested in salvaging some of the property from the building before it was destroyed. He explained in the letter that he took the cabinets and mantle as a "quid pro quo" for the thousands of dollars

worth of items he himself had installed in the house, but had left for the Department to salvage.

Subsequently, on August 16, 1997, Mr. Bowen returned the mantle and cabinets to the control of the Department. On August 19, 1997, by memorandum, Mr. Breshears recommended to Ron Glover that Mr. Bowen be terminated for "stealing" Department property. The memorandum discussed the meeting that had taken place on August 12, 1997, between Mr. Bowen and departmental employees, indicated that Mr. Bowen had felt "vindicated" in taking departmental property, and mentioned again that Mr. Breshears had told Mr. Bowen that there was a "right way and wrong way" of doing things.

On August 21, 1997, Ron Glover, Division Administrator, suspended Mr. Bowen without pay for his actions in removing Department property from the Bridger residence without authorization. Mr. Bowen was informed of the suspension, and notified of a meeting to be held on August 28, 1997, in Jefferson City with departmental employees to discuss his status with the Department.

At the August 28, 1997 meeting, Mr. Bowen met with Deputy Director John Smith, Mr. Breshears, and Mr. Glover. Mr. Smith had asked that the meeting be convened in order to give Mr. Bowen an opportunity to be heard prior to the Department's final decision concerning his employment. At that meeting, Mr. Bowen indicated that he had removed the property because of all the work he had placed into the home and his understanding that he could remove property from the residence. Additionally, he stated that he wanted to keep the cabinets to keep them from being destroyed. After this meeting, a collective decision was made by Mr. Breshears, Mr. Myers, and Mr. Barncord

that Mr. Bowen's employment with the Department should be terminated. This recommendation was forwarded to Mr. Glover, who in turn made the recommendation to the Director of the Department, who was the only Department employee vested with authority to terminate Mr. Bowen. The Director upheld the decision made by Mr. Bowen's supervisors to terminate Mr. Bowen.

On that same day, Mr. Bowen was notified by a letter signed by the Director that his employment with the Department had been terminated for "removing Department property from the Jim Bridger Conservation Area house without authorization." Mr. Bowen appealed. An evidentiary hearing was held before a Hearing Examiner on July 1 and October 28, 1998, at which both Mr. Bowen and the Department were represented by counsel. The Hearing Examiner concluded that Mr. Bowen was an employee-at-will and that, as a matter of law, the Department had the right to terminate him with or without cause, as long as that firing did not violate public policy. She further concluded that the Department did not violate any public policy in firing him, in that it did not discriminate against Mr. Bowen because of disability, retaliate against him for filing a worker's compensation claim, treat him in a disparate manner, or violate his due process rights under either state or federal law.

Mr. Bowen filed a Petition for Review with the Circuit Court, which affirmed the Hearing Examiner's Decision. Mr. Bowen appeals.

## II. LEGAL ANALYSIS

### A. Standard of Review

██ "Judicial review in a contested case is conducted upon the record made before the agency." *Cade v. State*, 990

S.W.2d 32, 37 (Mo.App. W.D.1999). We review the decision of the agency, and not that of the circuit court. *McCall v. Goldbaum*, 863 S.W.2d 640, 642 (Mo.App.1993). Our inquiry is limited to determining whether the action of the agency:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

Sec. 536.140(2) RSMo 1994.

**B.  The Department Was Required to Determine on Appeal Whether Mr. Bowen's Termination Was "Not For The Good Of The Service."**

Mr. Bowen argues in his sole point on appeal that MDOC erred in terminating his employment because Section 36.390 RSMo Supp.1996 and the MDOC termination procedure adopted in compliance therewith required that his termination be found to be "for the good of the service," which he says is equivalent to a requirement that he could only be terminated for cause, and that the evidence was insufficient to demonstrate that his termination was for cause.

Section 36.390(5) provides, in pertinent part:

*Any regular employee* who is dismissed ... *may appeal* in writing to the board within thirty days after the effective date thereof, *setting forth in substance his reasons for claiming that the dismissal,* suspension or demotion *was for political, religious, or racial reasons, or not for the good of the service.*

*Id.* (emphasis added).

In support of his contentions, Mr. Bowen admits Section 36.390(5) applies to employees of "merit agencies," and that he does not work for a "merit" agency as defined in Section 36.030.  Mr. Bowen admits that *Cole v. Conservation Comm'n,* 884 S.W.2d 18 (Mo.App. W.D.1994), and similar cases have held that if one is an employee-at-will rather than a merit employee, one can be fired for any reason or no reason so long as the reason does not violate public policy.  *Id.* at 20.  He notes that *Cole* also reaffirmed that judicial review of a termination is available to a terminated employee-at-will if "the employee is protected by statute, ordinance, regulation or employment contract."  *Id.*

Mr. Bowen alleges that Section 36.390 provides him with just such protection when Section 36.390(5)'s appeal provisions are considered in light of subsections 36.390(7) & (8), which state:

7.  The provisions for appeals provided in subsection 5 for dismissals of regular merit employees may be adopted by non-merit agencies of the state for any or all employees of such agencies.

8.  Agencies not adopting the provisions for appeals provided in subsection 5 shall adopt dismissal procedures substantially similar to those provided for merit employees.

*Id.*

In *Laws v. Secretary of State,* 895 S.W.2d 43 (Mo.App. W.D.1995), we held that Sections 36.390(7) & (8), read together, require that an agency adopt its own procedures for appeal or else it will be subject to Section 36.390(5)'s procedures for merit employees.  *Id.* at 46.  In *Snyder v. Dept. of Elem. & Sec. Educ.,* 952 S.W.2d 764 (Mo.App. W.D.1997), we recog-

nized that *Laws* found that non-merit employees are protected by a statutory right to judicial review of their terminations, under either Sections 36.390(7) & (8).[1] *Snyder*, 952 S.W.2d at 769.

Mr. Bowen argues that once Sections 36.390(5) became applicable to him as interpreted in *Laws*, *Snyder* and similar cases, he was no longer merely an employee-at-will, but became an employee who could be fired only for cause, that is, upon a showing that his firing was for the good of the service. Here, while the Department gave him a hearing and allowed him to appeal, it then fired him without reaching the issue of cause, and therefore, he argues, he is entitled to remand for a "for cause" hearing.

MDOC responds that it did not err in concluding that Mr. Bowen was an employee-at-will and therefore subject to termination at any time and for any reason, with or without cause—because of its status as a non-merit agency. It argues that employees of non-merit agencies remain employees-at-will even under Sections 36.390(7) & (8). These sections may entitle employees to an appeal under the procedures approved in subsection 36.390(5) before being fired, but, MDOC contends, they can then still be fired for any reason that does not violate public policy. The rights they are given under Section 36.390(5), in other words, are merely *procedural*; they acquire no *substantive* right not to be fired unless cause is shown. Accordingly, MDOC argues, because Mr. Bowen was afforded all of the procedural due process to which he was entitled on appeal by being given a hearing and appeal substantially similar in form to that provided for merit employees, he could then be terminated for any reason, and was.

■ We do not believe that either party's analysis of the relevant law is entirely consistent with the statutory framework set out in Section 36.390. In particular, we note that Mr. Bowen cites no authority for the proposition that his right to appeal his termination somehow elevates his employment status from "at-will" to "for cause," and we have found none. It is well-settled at common law that even at-will employees may challenge their termination if that termination contravened public policy. *See, e.g., Yow v. Village of Eolia*, 859 S.W.2d 920, 922 (Mo.App.1993) (detailing "public policy exception" allowing judicial challenge to termination of at-will employee). Certainly, nothing in *Laws* or *Snyder*, which are heavily relied on by Mr. Bowen, states that a non-merit employee can be fired only for cause. Those cases merely state that an employee has the right to appeal as set out in Section 36.390(5). This begs the question what issues they can raise on appeal. It does not give them the right to argue that they could only be fired for cause.

■ In our recent decision in *Daniels v. Board of Curators of Lincoln University*, 2001 WL 68354 (Mo.App. W.D., January 30, 2001), we addressed this issue, holding that "the mere right to a 'careful review' [of a termination does] not change the nature of [an employee's] employment from at-will employment to an arrangement in which he had a property interest."

---

1. Here, the Department states that pursuant to Section 36.390(8) it has adopted—and acted in conformity with in this case—employee grievance procedures substantially similar to those provided for merit employees in Section 36.390(5). Although the Department has not provided a copy of any such procedures for our review, Mr. Bowen does not contest this allegation, and we therefore assume it to be true for purposes of this appeal. *See Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 397 n. 5 (Mo.App. W.D.1984) (facts stated in appellate briefs may be the foundation for judicial admissions).

*Daniels,* 2001 WL 68354 at *6. We similarly noted that "[t]he granting of a right to appeal does not of itself change an employee's status as an employee at will." *Daniels,* 2001 WL 68354 at *6, Iciting, Sadler v. Village of Bel–Ridge, *741 S.W.2d 889, 891 (Mo.App. E.D.1987). We held that the mere existence of the employee's right to appeal his termination under Section 36.390(5), (7) & (8) did not itself alter his employment status to that of an employee who could be fired only "for cause." That analysis applies here.*

On the other hand, we also reject MDOC's argument that because it is a non-merit agency, once it gives employees the right to appeal accorded by Section 36.390(5), it can then fire them for any reason not disallowed by public policy. To so hold would make the appeal procedure accorded by Section 36.390(5) a mere hollow bureaucratic exercise which has no effect on whether termination will be permitted. We will not presume that the legislature intended the appeals process to be a meaningless act. *See Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992) (legislature is presumed not to enact meaningless provisions); *State ex rel. Ozark Border Elec. Co-op. v. Public Service Com'n of Missouri,* 924 S.W.2d 597, 601 (Mo.App. W.D.1996).

Section 36.390(5) does not merely state that an employee-at-will is entitled to an appeal hearing prior to dismissal at which he or she can try to reverse the termination decision as best he or she can. Rather it states that an employee may file an appeal "setting forth in substance his reasons for claiming that the dismissal, suspension or demotion was *for political, religious, or racial reasons, or not for the good of the service." Id.* It would be pointless for the statute to provide that the employee may explain why he or she believes dismissal was based on these grounds unless the legislature intended that the reviewing body then determine whether termination was for political, religious, or racial reasons, or not for the good of the service, and, if it finds that this was the basis of termination, to reverse the decision. Otherwise, the right to claim that dismissal was for improper reasons would be a hollow and pointless right indeed.

To so rule does not—as argued by MDOC—eliminate the doctrine of at-will employment in Missouri, any more than did our holding in *Daniels.* First, Section 36.390 applies only to state employees. Second, our recognition that the legislature provided that an at-will employee is entitled to raise the limited grounds for appeal afforded by Section 36.390(5) does not thereby elevate their status to that of merit employees. They remain at-will employees; they merely cannot be fired for reasons prohibited by the statute—i.e., for racial, political, or religious reasons, or if the firing was "not for the good of the service." If the legislature amends the statute to remove these protections, those covered employees would lose their statutory right to appeal on these grounds. Moreover, Section 36.390(5) does not give employees such as Mr. Bowen the other rights accorded merit employees under other statutes, such as the right of merit employees to a pre-termination written notice of reasons for his or her discharge under Section 36.380 RSMo 1994.

We further reject Mr. Bowen's argument that "for the good of the service" means "for cause," and since the statute now provides that he can appeal that his firing was "not for the good of the service," it means that he can appeal if his firing was not for cause. While "for the good of the service" is not defined by Missouri statutes, Section 36.380 makes

clear that it is not synonymous with "for cause," although the two concepts will usually overlap. Section 36.380 provides:

> An appointing authority *may dismiss for cause* any [merit] employee in his division . . . when he considers that such action is required *in the interests of efficient administration* and that *the good of the service will be served thereby.*

Section 36.380 thus provides that, in order to terminate a merit employee, an appointing authority must first have *cause* to do so. The statute then provides a second tier of inquiry for the appointing authority, stating that before deciding to dismiss the merit employee for cause, the appointing authorities must consider whether dismissal is in the interests of efficient administration *and* whether "the *good of the service* will be served thereby ." *Id.* (emphasis added). If "for cause" and "for the good of the service" were in fact synonymous, as Mr. Bowen argues, then it would be redundant for the legislature to have included both terms in Section 36.380, and the "for the good of the service" language would be rendered mere surplusage. This flies in the face of our maxims of statutory construction. *See Comm. on Legislative Research of Missouri Gen. Assembly v. Mitchell,* 886 S.W.2d 662, 664 (Mo.App. W.D.1994), *citing Hadlock v. Dir. of Revenue,* 860 S.W.2d 335, 337 (Mo. banc 1993) ("We

should not interpret statutes in a way which will render some of their phrases to be mere surplusage. We must presume that every word of a statute was included for a purpose and has meaning").

It is true that, in the case of merit employees, courts have often combined their inquiry into whether a firing was for cause with whether it was for the good of the service, *see Kyle v. Pers. Advisory Bd.,* 607 S.W.2d 848, 850 (Mo.App. W.D.1980); *Anderson v. Pers. Advisory Bd.,* 586 S.W.2d 738, 742 (Mo.App. W.D.1979),[2] and it is not surprising that it would often be for the good of the service to terminate an employee who had given cause to do so. Prior cases have also recognized the distinction between these terms, however. For example, *Seabaugh v. Cassell,* 998 S.W.2d 593 (Mo.App. E.D.1999), reviewed the dismissal of an employee who claimed that she was dismissed based on the likelihood that she would suffer dissociative episodes stemming from Post Traumatic Stress Disorder (PTSD), a condition she suffered since the recent death of her mother. The court found that the reason for the employee's dismissal was not because of her PTSD, but rather because she had committed Class I neglect of a patient. The court noted that the finding that the employee suffered from PTSD, and that it was likely the employee would suffer another dissociative episode, was the basis for the agency's conclusion that employee's

---

**2.** Both *Anderson* and *Kyle* cite *State ex rel. Eckles v. Kansas City,* 257 S.W. 197 (Mo.App. 1923), which seems to use the terms "for the good of the service" and "for cause" interchangeably. *Eckles,* however, did not involve interpretation of Sections 36.380 & 36.390, or their predecessors. *Eckles* involved a County Charter which expressly used the terms "for the good of the service" and "for cause" alternatively. *Eckles* determined that, as used in the Charter, "[d]ischarge for the 'good of the service' or 'for cause' imply some personal misconduct or fact, rendering the incum-

bent's further tenure harmful to the public interest." *Eckles,* 257 S.W. at 200. To the extent that *Anderson, Kyle,* or similar cases indicated in *dicta* that these terms are always used synonymously, they would not be correct with respect to Section 36.380, which states that first a merit employee must give cause for his termination; only then is inquiry made as to whether termination would be for the good of the service. This Section thus gives the terms different meanings, and only the phrase "not for the good of the service" is then carried over into Section 36.390(5).

termination was "for the good of the service," but not the basis for the termination itself. *Id.* at 596. In so finding, the court implicitly recognized an analytical distinction between the terms "for cause," and "for the good of the service." *Id.*

 In sum, where, as here, the employee is not a merit employee, then Section 36.380 does not apply, and no finding of cause is necessary in order to terminate the employee. Under Section 36.380(5), however, the employee, like a merit employee, may complain that the termination was for political, religious or racial reasons, or that it was "not for the good of the service." In determining whether the firing was "not for the good of the service," MDOC need not, of course, consider whether cause was shown for the firing, since the firing may be made for any cause or no cause, so long as it is not for a reason prohibited under the common law or under Section 36.390(5). But, there may nonetheless be reasons the Department may decide that termination is not for the good of the service. For instance, it could determine that the employee is essential to the Department's function, or that the employee's departure would have severe effects on morale, or that no reasonable substitute is available, or more subjective factors such as the employee's history and motivation may cause the Department to decide that termination is not the proper remedy. Ultimately, of course, this is a matter for the agency's determination, subject to review in the circuit court, and in this Court, to determine whether the agency's decision exceeded agency authority; was not based upon substantial and competent evidence on the record as a whole; was unreasonable, arbitrary or capricious; involved an abuse of discretion; or was otherwise unlawful. § 536.140 RSMo; *Prenger v. Moody*, 845 S.W.2d 68, 73–74 (Mo.App. W.D.1992). If none of these bases for reversal apply, then we will affirm, for it is not our role to substitute our judgment for that of the Department as to what is for the good of the service.

Here, the Department determined that Mr. Bowen was not terminated for religious, political or racial reasons, but it did not determine whether his termination was "not for the good of the service." In this regard, it erred. We therefore reverse and remand to the Department so that it can determine whether terminating Mr. Bowen, rather than taking some lesser action or no action at all, was "not for the good of the service."

Presiding Judge SMART, and HOWARD, J., concur.