Danny SNIDER, Respondent,

v.

**MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Appellant.**

**No. WD 73543.**

Missouri Court of Appeals,
Western District.

Nov. 8, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

Application for Transfer
Denied Jan. 31, 2012.

Alicia C. O'Connell, Assistant Counsel, Jefferson City, MO, R.B. Regan, Assistant Regional Counsel, Chesterfield, MO, Paula Bangert Lambrecht, Assistant Chief Counsel, Jefferson City, MO, for Appellant.

James G. Nowogrocki and Michael Gilgrist, St. Louis, MO, for Respondent.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and JAMES EDWARD WELSH, Judge.

VICTOR C. HOWARD, Judge.

The Missouri Highways and Transportation Commission ("the Commission") appeals the circuit court's judgment reversing the decision of the Commission, which upheld the termination of Danny Snider's employment with the Missouri Department of Transportation ("MoDOT"). The circuit court's judgment is reversed, and the case is remanded with instructions to reinstate the Commission's decision.

**Factual and Procedural Background**

Danny Snider was employed by MoDOT for approximately eight years until the termination of his employment on June 1, 2009. At the time of the termination, Snider was a senior maintenance worker at MoDOT's District 4 maintenance facility in Concordia, Missouri. While employed

with MoDOT, Snider was rated as a successful employee. His supervisor noted on his performance evaluations that Snider did a very good job no matter what task he was assigned, he always arrived early to work, and he often volunteered for extra work. Prior to his termination, Snider had not received any formal disciplinary verbal warnings or suspensions.

One morning in March 2009, Snider was having a conversation with two co-workers, Darryl Frerking and Jerry Loges, at the Concordia maintenance facility. Snider and the other two employees were discussing a female co-worker, Andrea Young, believing that she had not yet arrived for work. Young was at work at the time and was in the bathroom about twenty feet away from Snider and the other two employees. During the conversation, Snider referred to Young as a "bitch." Young overheard the comment and was upset by it. After Snider made the comment, all employees at the Concordia facility were told to watch their language.

In March or April of 2009, Snider made a statement to the effect of "I guarantee I will take down anyone who takes me down." Snider later explained that when he made the comment, he meant that if he got in trouble for violating MoDOT's policies, he would turn in others who had violated policies. Snider made the comment at the Concordia facility in the presence of all of his co-workers, including Young. Snider's supervisor, Kathy Hibdon, was also present and heard the statement. Hibdon told Snider that he could not say things like that because people might interpret his comment the wrong way.

An investigation was conducted regarding Snider's comments. During the investigation, Snider admitted to making both comments. He also admitted that he had used the word "bitch" in the workplace on more than one occasion. The results of the investigation were reported to the District Engineer, Elizabeth Wright. Wright determined that Snider's comments violated several of MoDOT's policies and that his continued employment was no longer for the good of the service of MoDOT.[1] Therefore, Wright terminated Snider's employment with MoDOT effective June 1, 2009.

Snider appealed his termination to the Commission. A post-termination hearing was held on October 8, 2009. The Commission issued a decision sustaining the termination of Snider's employment. The Commission found that Snider had made both comments and that the comments violated several of MoDOT's personnel policies. The Commission further determined that Snider's termination was for the good of the service, finding that although Snider was successful in his job performance, his inappropriate comments were disruptive and not conducive to a successful work environment.

Snider sought judicial review of the Commission's decision, and the circuit court reversed the Commission's decision sustaining the termination. The circuit court ordered that Snider be reinstated to his former position with MoDOT and awarded Snider back pay. This appeal followed.

### Standard of Review

Section 536.140.2 provides for appellate review of the administrative ruling, rather

---

1. Prior to reaching this determination, Wright met with several other MoDOT management employees, including maintenance superintendent Ron Cordes. Although Cordes initially leaned toward a lower level of discipline, by the end of the meeting, all parties agreed that termination was appropriate.

than the decision of the circuit court, to determine whether the administrative action:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2, RSMo Cum.Supp.2011.

■■■ In reviewing the decision of the agency, we must look to the whole record and not merely at the evidence that supports the decision. *Mo. Veterans' Comm'n v. Vanderhook,* 290 S.W.3d 115, 119 (Mo. App. W.D.2009). We view the evidence objectively, not in the light most favorable to the agency's decision. *See id.* " 'We may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses.' " *Id.* at 120 (quoting *Roorda v. City of Arnold,* 142 S.W.3d 786, 789 (Mo.App. W.D.2004)). We review questions of law *de novo. Id.*

### Discussion

■■ Where, as here, an employee is a non-merit employee, "no finding of cause is necessary in order to terminate the employee." *Bowen v. Mo. Dep't of Conservation,* 46 S.W.3d 1, 11 (Mo.App. W.D.2001). However, pursuant to section 36.390.5, a

non-merit employee may assert on appeal that the termination "was for political, religious, or racial reasons, or not for the good of the service." [2] § 36.390.5, RSMo Cum. Supp.2011; *see also Bowen,* 46 S.W.3d at 11. Therefore, in determining whether the termination was "not for the good of the service," the agency need not consider whether cause was shown for the termination, "since the firing may be made for any cause or no cause, so long as it is not for a reason prohibited under the common law or under [s]ection 36.390.5." *Bowen,* 46 S.W.3d at 11.

■■■ " 'Although not defined by the statutes, the standard "for the good of the service" implies some personal misconduct or fact that renders the employee's further employment harmful to the public interest.' " *Vanderhook,* 290 S.W.3d at 119 (quoting *Lombardi v. Dunlap,* 103 S.W.3d 786, 791 (Mo.App. W.D.2003)). "The standard further requires a decision by the appointing authority that the employee's conduct is of such a serious nature that dismissal is required rather than some other form of discipline." *Lombardi,* 103 S.W.3d at 791. This court has identified several other factors a department might consider in determining whether termination is not for the good of the service:

For instance, [the department] could determine that the employee is essential to the [d]epartment's function, or that the employee's departure would have severe effects on morale, or that no reasonable substitute is available, or more subjective factors such as the employee's history and motivation may cause the [d]epartment to decide that termination is not the proper remedy.

or for a reason prohibited by public policy.

---

**2.** Snider does not contend that he was terminated for political, religious, or racial reasons

*Bowen,* 46 S.W.3d at 11. Ultimately, the question of whether termination was for the good of the service is a matter for the agency's determination. *Id.* "If none of [the section 536.140] bases for reversal apply, then we will affirm, for it is not our role to substitute our judgment for that of the [agency] as to what is for the good of the service." *Id.*

■ On appeal, Snider contends that the Commission erred in affirming his termination because there was no competent and substantial evidence to support a finding that his comments violated MoDOT policies. Snider further asserts that the Commission erred in finding that his termination was for the good of the service because termination, as opposed to some other form of discipline, constituted an excessive sanction in light of his strong performance record.

Although a showing of cause was not necessary for MoDOT to terminate Snider's employment, an analysis of whether his comments violated MoDOT policy is useful in determining whether there is competent and substantial evidence to support a finding that the termination was for the good of the service. In the termination letter, Wright referred to several policies which she believed Snider violated in making the two comments. The first policy is MoDOT's "Standard Rules of Conduct," which provides, in part:

The department believes certain conduct may disrupt the work environment, may cause safety problems for employees and the general public; may discredit the department and may undermine the integrity of its goals. The department has developed this policy specifically to address behavior violations and other types of conduct believed not to be in the best interest of the department. This policy is not intended to include all violations which could result in discipline. Violation of these rules can include discipline up to, and including termination.

Wright also referred to MoDOT's "Workplace Violence" policy. Although the policy primarily prohibits violence and/or threats of violence, it also includes a general statement that prohibited behavior includes "any communication or physical actions intended, or reasonably expected to threaten, intimidate, or harm another person." Finally, Wright noted that MoDOT's "Equal Employment Opportunity Policy" prohibits verbally abusive or insulting behavior based on gender.

■ Snider first asserts that there was no evidence in the record that anyone felt insulted by the "bitch" comment or that anyone felt threatened by his statement that he would take down anyone who tried to take him down; in fact, Frerking and Hibdon both testified that they did not believe Snider's second comment was a threat. Although Young did not testify at the hearing, others who were involved in the investigation testified that Young said she was upset that Snider referred to her as a bitch and that she felt threatened and intimidated by Snider's comment about taking anyone down who tried to take him down. There was no objection to this testimony. According to section 536.070(8), RSMo Cum.Supp.2011, in any contested case, "[a]ny evidence received without objection which has probative value shall be considered by the agency along with the other evidence in the case." Therefore, hearsay evidence admitted without objection may be utilized as competent and substantial evidence to support the agency's decision. *State ex rel. GS Techs. Operating Co. v. Pub. Serv. Comm'n,* 116 S.W.3d 680, 690 (Mo.App. W.D.2003). "When any admissibility issue is waived by failure to object, the issue cannot be raised subsequently by arguing

the lack of sufficiency of the evidence to support a decision." *Id.*

Snider admitted that he used the term "bitch," a derogatory and gender-specific term, in reference to Young. Although Snider did not know Young was present, she overheard what Snider said. There was testimony in the record that Young was upset by Snider's comment. There was competent and substantial evidence from which the Commission could have found that Snider violated MoDOT's policy by using an insulting term based on gender in reference to Young.

As to Snider's second comment, he relies heavily on the fact that Hibdon testified that she did not find the comment threatening. However, immediately after Snider made the comment, Hibdon told him that he could not say things like that because people could take it the wrong way. There was testimony that Young felt intimidated and threatened by Snider's comment. Even if Snider did not intend to threaten Young, Wright reasonably determined that his comment could have intimidated others in the workplace from reporting his behavior. Thus, there was competent and substantial evidence to support a finding that Snider's comment violated MoDOT policy.

In arguing that his termination was not for the good of the service, Snider notes that other employees who engaged in the use of sexual innuendos in the workplace received only written warnings or suspensions rather than termination. However, there was testimony at the hearing that the circumstances involving the other employees were not comparable to Snider's situation in that he violated more than one MoDOT policy.

Finally, Snider contends that his termination was not for the good of the service

in light of his strong job performance. Despite Snider's strong work ethic, Wright had concerns regarding how Snider interacted with other employees and how his behavior could impact his ability to work as a team with other employees. Wright had further concerns about other employees' ability to successfully work as a team with Snider in light of his behavior. Ultimately, MoDOT and the Commission believed that Snider's behavior was inappropriate and disruptive to the workplace, thus warranting termination despite his strong work performance.

In addition, there was testimony at the hearing that Snider was not essential to MoDOT, that Snider had been replaced, and that the Concordia maintenance facility was still functioning properly. Moreover, there was evidence that Snider violated several MoDOT policies and that another employee felt upset and threatened by his behavior in the workplace. For these reasons, the Commission determined that Snider's termination was for the good of the service. Although the evidence could support a different conclusion, we cannot substitute our judgment for that of the Commission as to what is for the good of the service. *Bowen*, 46 S.W.3d at 11. Where there was competent and substantial evidence to support the Commission's determination that Snider's termination was for the good of the service, we must affirm the Commission's decision.[3]

## Conclusion

The Commission's decision upholding the termination of Snider's employment is affirmed. The circuit court's judgment is reversed, and the case is remanded to the

---

**3.** Given our conclusion, Snider's motion for attorneys' fees and expenses is denied.

circuit court for entry of a judgment reinstating the Commission's decision.

All concur.