In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00013-CV
_____

HAZMAT INTERNATIONAL, INC., Appellant

V.

OASIS 1488 OPERATING, LLC AND SVSONS PROPERTIES 1488, LLC,
Appellees

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 22-01-01181-CV**

_____

**MEMORANDUM OPINION**

Appellant Hazmat International, Inc. (Hazmat) appeals the trial court's take-nothing judgment on its claim for quantum meruit against Appellees Oasis 1448 Operating, LLC (Oasis) and SVSONS Properties 1488, LLC (SVSONS).[1] In one

---

[1]The trial court conducted a bench trial and found that, since no contract was formed because there was no meeting of the minds as to the material terms of the price and who was obligated to pay, there could be no breach of contract claim.

1

issue, Hazmat complains the trial court's findings that Hazmat lacked evidence of reasonable and necessary damages and failed to prove Oasis received a benefit to support its quantum-meruit claim were against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. Because Hazmat failed to prove it was entitled to recover on its quantum-meruit claim, we affirm the trial court's judgment.

## BACKGROUND

Hazmat filed claims for breach of contract and quantum meruit against Appellees, alleging Appellees negligently spilled dangerous materials on its gas station property and failed or refused to pay for Hazmat's environmental cleanup and remediation services. Hazmat claims it entered into an agreement with Oasis to perform services on the property, which is owned by SVSONS and managed, operated, and insured by Oasis. Hazmat alleged that Appellees received and accepted the labor, services, and materials it provided and was bound to make payment and that its damages amounted to $125,966.94. Hazmat alleged that Appellees accepted its labor and materials knowing that Hazmat intended for Appellees to reimburse it and that it would be unjust for Appellees to accept the benefits without payment.

2

Hazmat attached to its petition a Third-Party Authorization Form signed by Oasis's manager, Irfan Maredia (Maredia), and appointing Hazmat to work as Oasis's agent for purposes of managing waste materials it may generate. Hazmat's exhibits include an Incident Response and Work Order Contract and Personal Guaranty (the Contract) signed by Maredia and stating that as Oasis's authorized agent, he agreed to employ Hazmat "'at the current published rates for emergency response In Regard to the fore mentioned spill of Hazardous or Non-Hazardous Materials.'" The Contract states that the "'completed invoice(s) for this job will be paid in full upon receipt regardless of insurance coverage/non coverage.'" The Contract authorizes Hazmat "'to complete disposal of associated wastes to permitted disposal facilities forthwith.'" The Incident Response shows that Hazmat received a call from the private property owner complaining about sewer overflowing into the storm drain, running into the retention pond, and crossing under the street to private property.

The Incident Response lists Oasis's manager, Maredia, as the responsible party and notes that Shahid Maknojia (Maknojia) is the store owner. Hazmat's exhibits include its Invoice for Hazmat cleanup, which shows the description of services, quantity, rate, and a balance due of $125,966.94. The record shows SVSONS's insurance company denied SVSONS's claim for damages and pollutant

3

cleanup because its investigation showed a damaged underground pipe, which was not considered covered property, failed and caused the hazardous waste to leak.

The trial court conducted a bench trial and found that since no contract was formed because there was no meeting of the minds as to the material terms of the price and who was obligated to pay, there could be no breach. On appeal, Hazmat only complains about the trial court's findings regarding its quantum-meruit claim, thus we will only include testimony relevant to determining whether those findings are supported by factually sufficient evidence.

Dustin Rutherford, co-owner of Hazmat, testified that Hazmat has a rate sheet based on its dealings with its customers and insurance companies. Rutherford testified he had personally attended the cleanup of over three hundred sites, including the one in this case. Rutherford explained that when the gas station's raw sewage lift station overflowed, sewer water ran into the stormwater drain, to the water retention pond, into the ditch, through the culvert, and across the street into the adjacent property. Rutherford testified that Keith Miles of Montgomery County Environmental Services and Maredia, the store manager, showed him the slime and sludge from the sewer, which appeared to be about a week old. Rutherford observed the sewer bubbling up from a clean out by the gas pumps and flowing into the storm drain. Rutherford explained that the need for the cleanup was due to flood water, and

since the electricity was working when he observed the site, he believed a sewage lift pump went out. Rutherford did not know if the electricity had been out before he arrived. The trial court reviewed photographs of the scene of the cleanup.

Rutherford testified that Maredia signed the Contract on Oasis's behalf authorizing Hazmat to dispose of the waste, and Rutherford signed as a witness. Rutherford agreed that SVSONS was not a party to the Contract and that Oasis never saw a rate sheet or knew what rate would be charged before Hazmat provided the work. Rutherford could not recall who called Hazmat to come to the site. Rutherford testified that Maredia spoke with the store owner about signing the Contract, and the owner sent Rutherford a copy of his driver's license. Rutherford explained that although he was asked about the job's cost, he was unable to provide an estimate because he did not know what the cost would be, but he did explain the scope of the work required to clean up the site. Rutherford testified that he did not require proof of insurance before providing the work and was aware that two insurance companies denied Hazmat's claim for his rates. Rutherford testified Hazmat completed the clean-up services over a four-day period, which required the use of twenty trucks to remove approximately 123,080 gallons of what he described as a mixture of sewage and water.

Trina Burton, Hazmat's administrator who performs billing and collections services, testified that she compiled the paperwork, including worksheets and timesheets for four days of services, and used Hazmat's set rates to prepare Oasis's invoice which shows Oasis owes $125,966.94. The trial court admitted the timesheets and worksheets into evidence. Burton explained that worksheets are usually prepared by a project manager and include a list of the personnel, equipment, and supplies used on the job, as well as the company name it provided services for. Burton testified that Oasis is the company listed on the worksheets, and SVSONS is not listed.

Burton explained that she made some adjustments to the set rates and those adjustments, which were in Oasis's favor, are reflected in the invoice. Burton testified that the Contract mentions Hazmat's published rates, which are provided to its clients upon request, but Oasis never requested Hazmat's rate sheets. Burton testified that Hazmat could have provided Oasis the rate sheets prior to any work being done. Burton explained that Hazmat regularly charges the rates on the sheets to its customers, and that its invoices reflecting its rates usually get paid.

Burton also testified that Hazmat paid invoices which totaled about $12,000 to a vendor for the liquid disposal, and the trial court admitted those invoices into evidence. Burton testified that 90% of its cleanups involve insurance claims, and she

6

contacted Oasis's insurance companies and worked with the adjustor on a claim, which was denied because Oasis failed to seek prior authorization. Burton testified that Oasis did not make any payments for Hazmat's work reflected in the invoice.

Maknojia, the owner and operator of Oasis, testified that Maredia is his employee and daytime manager. Maknojia testified that he is the sole manager of SVSONS, a real estate manager-managed LLC, that owns the property at issue and leases it to Oasis, who has the duty to keep it free of contaminants. Maknojia testified that he gave Maredia authority to sign Hazmat's work order, which he did not consider to be a contract because Hazmat told Maredia that it would collect from his insurance company. Maknojia explained that as a store manager, Maredia only had authority to sign for $3,000 worth of materials and products. Maknojia never requested a price list from Hazmat, and disputed Hazmat's bill when his insurance company rejected the claim.

Maknojia testified Maredia authorized Hazmat to do the work because Hazmat said it would collect from the insurance company and that he did not have to pay anything. Maknojia explained that Hazmat and TCEQ showed up on a Friday evening without being called, and Maknojia would not have authorized the work if he had known he would be responsible in the event his insurance company did not pay. Maknojia testified that he had a preferred vendor that functioned daily that was

7

responsible for doing such work, and he would have had another company remove the materials.

Maknojia believed Hazmat should be paid for the work, but he did not agree with the invoice amount or the scope of the work because previous cleanups at his other properties cost between $10,000 and $12,000. Maknojia testified he never would have authorized Hazmat to do work amounting to over $120,000. Maknojia explained that his insurance companies denied Hazmat's claims, which included work performed on neighboring property, and that his previous cleanups were paid by his insurance companies. Maknojia testified that SVSONS did not receive any benefit from Hazmat's cleanup.

Travis Bishop, President of Hazmat, testified that Hazmat paid disposal fees for the water it removed from the property, its employees who performed the work, and overhead costs for its equipment used on the job.

Hazmat called Rutherford as a rebuttal witness. Rutherford explained that Hazmat pumped sewage from a small area in the ditch and removed two tanker loads of sewage from the neighboring property across the street. Rutherford testified that Hazmat's bill is not itemized by location of where the work was performed.

The trial court signed a Final Judgment ordering that Hazmat take nothing on its claims for breach of contract and quantum meruit against Oasis and SVSONS.

8

The trial court signed Findings of Fact and Conclusions of Law. Regarding Hazmat's

quantum-meruit claim, the trial court found that:

> The Court lacks evidence from which it can determine the reasonableness and necessity of the claims repairs – *i.e.*, the damages. With no expert who either could or did testify to the reasonableness and necessity of this costs of repair damage model, the Court is left with Hazmat saying it was reasonable and necessary, and SVSONS and Oasis saying it was not. Hazmat has failed to prove the amount of damages it sought.
>
> Further, the evidence is insufficient to prove the element that SVSONS and Oasis received a benefit under circumstances which made it clear that Hazmat expected SVSONS and Oasis to pay given all three parties fully expected that the payment would be made by an insurance company and not these three parties. Although Hazmat said that it expected SVSONS and Oasis to pay once the claim was denied, they disputed that fact, an[d], as noted above, the Court simply finds that these parties were never on the same page. Hence, the circumstances never indicated to SVSONS or Oasis – nor would they have occurred to any reasonable person standing in their shoes, that Hazmat expected them to pay for anything other than a deductible under their insurance policies.

The trial court found that "[w]ith those missing elements of the *quantum meruit*

claim, Hazmat's *quantum meruit* claim fails, as does its claim for damages under

that cause of action." The trial court made the following Conclusions of Law

concerning Hazmat's quantum-meruit claim: "Plaintiff failed to prove the value of

labor provided[;]" "Plaintiff failed to prove any circumstances which would have

notified a reasonable person that Hazmat expected either Oasis and/or SVSONS to

pay[;]" and "[g]iven that SVSONS did not own much of the property on which the cleanup work was done, it received no benefit for that work."

Hazmat filed a motion for new trial, arguing, among other things, that there was factually insufficient evidence to support the trial court's findings that (1) the trial court lacked evidence from which it could determine damages for Hazmat's quantum-meruit claim, and (2) Hazmat's evidence was insufficient to prove the element of its quantum-meruit claim that SVSONS and Oasis received a benefit under the circumstances which made it clear that Hazmat expected SVSONS and Oasis to pay. The trial court denied Hazmat's motion for new trial.

## ANALYSIS

Hazmat complains the trial court's finding that it lacked evidence of reasonable and necessary damages to support its quantum-meruit claim was not supported by factually sufficient evidence.

We review a trial court's findings for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of the evidence on an issue on which it had the burden of proof, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d

10

237, 242 (Tex. 2001). In a factual sufficiency review, we examine all the evidence and view it in a neutral light. *See id.* We cannot set the finding aside unless the evidence is so weak or so against the great weight and preponderance of the evidence that the trial court's finding is clearly wrong and unjust. *Id.*

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). The purpose of the common law doctrine of quantum meruit is to prevent a party from being unjustly enriched and allowed to retain the benefits of another's performance without payment. *Id.* (citing *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). To recover under a quantum-meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the company sought to be charged; (3) those services and materials were accepted by the company sought to be charged, and were used and enjoyed by it; and (4) the company sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the company sought to be charged. *Id.* at 732-33 (citing *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). Generally, a party cannot recover under a quantum-meruit claim when there is a

valid contract covering the services or materials furnished. *In re Kellogg Brown & Root*, 166 S.W.3d at 740. The measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished. *Hill*, 544 S.W.3d at 733 (citing *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 796 (Tex. App.—Dallas 2007, no pet.)). Lay testimony may be sufficient to prove the reasonable value of the work performed and the furnished materials. *See Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex. App.—Dallas 2008, no pet.); *Lamajak*, 230 S.W.3d at 796 (citing Tex. R. Evid. 701).

Since reasonable value may be established by lay testimony, the trial court could consider Hazmat's witnesses who provided a lay opinion on the reasonable value of the work Hazmat performed and the materials it furnished. *See Johnston*, 261 S.W.3d at 902; *Lamajak*, 230 S.W.3d at 796. That said, Hazmat's evidence regarding reasonable value was not supported by factually sufficient evidence. None of Hazmat's witnesses testified that Hazmat's invoice for $125,966.94 was a reasonable value for the work performed and the materials furnished. Rutherford even testified that the invoice was not itemized by location of where the work was performed and included cleanup of areas not owned by Appellees.

We conclude that the trial court's finding that it lacked evidence of the reasonable value of the work Hazmat performed and the materials it furnished is not

12

against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242.

Hazmat additionally complains the trial court's finding that it failed to prove Oasis received a benefit to support its quantum-meruit claim was not supported by factually sufficient evidence. The trial court found that the evidence is insufficient to prove the element that Appellees received a benefit under circumstances which made it clear that Hazmat expected Appellees to pay given that all three parties fully expected an insurance company to pay.

Maknojia testified that SVSONS did not receive any benefit from Hazmat's cleanup. Maknojia testified Hazmat said it would collect from his insurance company and that he did not have to pay anything. Rutherford testified that he did not require proof of insurance before providing the work and that he was aware that two insurance companies denied Hazmat's claim for his rates. Burton testified that 90% of Hazmat's cleanups involve insurance claims, and that Oasis's insurance companies denied the claim because Oasis failed to seek prior authorization.

Based on our review of the record, Hazmat failed to show that Appellees were reasonably notified that Hazmat expected Appellees to pay for the work performed and the furnished materials. *See Vortt Expl. Co.*, 787 S.W.2d at 944-45. We conclude that the trial court's finding that Hazmat failed to prove the element that Appellees

13

received a benefit under circumstances which made it clear that Hazmat expected Appellees to pay for the cleanup--given that all three parties fully expected an insurance company to pay–was not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. Having examined the evidence, we conclude the record contains factually sufficient evidence to support the trial court's finding. We overrule issue two.

## CONCLUSION

Having determined the evidence is factually sufficient to support the trial court's findings, we conclude Hazmat failed to prove it was entitled to recover on its quantum-meruit claim. Accordingly, we affirm the trial court's judgment that Hazmat take nothing on its claim for quantum meruit against Oasis and SVSONS.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on October 21, 2025
Opinion Delivered November 20, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

14